**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

PETER S. BEZICH, individually and on )
behalf of a class of others similarly situated, )
)
      Plaintiff, )
)
v. )    Civil Action No.: _____
)
LINCOLN NATIONAL LIFE )
INSURANCE COMPANY, )
)
      Defendant. )

**NOTICE OF REMOVAL**

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and 1453,

Lincoln National Life Insurance Company ("Lincoln National"), the sole defendant in this case,

respectfully removes this action from the Circuit Court of Allen County, Indiana, in which court

this action is pending as Cause Number: 02C01-0906PL-73, to the United States District Court

for the Northern District of Indiana, Fort Wayne Division, being the judicial district and division

embracing the place where the action is pending. 28 U.S.C. § 94(a). In support of this Notice of

Removal, Lincoln National states as follows:

**I.**    **Introduction.**

1.    The Plaintiff, Peter S. Bezich ("Plaintiff"), commenced this putative class action

lawsuit by filing the Complaint in the Circuit Court of Allen County, Indiana, on or about June

19, 2009. He is the purchaser of a life insurance policy issued by Chubb Life Insurance

Company of America ("Chubb"), on or about December 27, 1996. *See* Compl. ¶ 3.[1] In the

---

[1] As a result of an acquisition, in 1997 Chubb Life Insurance Company of America was renamed Jefferson-Pilot
Financial Life Insurance Company. Thereafter, effective July 2, 2007, Jefferson Pilot Financial Insurance Company
merged into The Lincoln National Life Insurance Company. *See* Exhibit 2, attached hereto, Declaration of Joseph

Complaint, Plaintiff seeks an award of compensatory damages and restitution against Lincoln National for allegedly improperly deducting Cost of Insurance charges that exceed the amounts allegedly permitted by the terms of his life insurance policy. *See* Compl. ¶¶ 21-25, p.7.

2.     Plaintiff's counsel requested the Allen County Circuit Court Clerk to serve the Summons and Complaint via certified mail to Lincoln National in care of its registered agent, Corporation Service Company. The Allen County Clerk of Court served Corporation Service Company on June 26, 2009. This removal was effected within thirty days of service of the Complaint on Lincoln National and, thus, is timely. 28 U.S.C. § 1446(b); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (notice of removal is timely if filed within thirty days after service of the complaint).

3.     In accordance with 28 U.S.C. § 1446(a), a copy of the Summons and Complaint and attachments thereto are attached to this Notice of Removal.[2] This constitutes the entirety of all process, pleadings and orders served upon Lincoln National in the state court proceeding.

4.     Contemporaneously with the filing of this Notice of Removal, written notice will be served on Plaintiff through his counsel of record and a copy of this Notice of Removal will be filed with the Circuit Court of Allen County, Indiana.

**II.     Subject Matter Jurisdiction Based On 28 U.S.C. § 1332 Is Proper – CAFA-Based Removal.**

5.     This case is properly removable under the Class Action Fairness Act of 2005, Pub. L. No. 109-2, § 2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.) ("CAFA"). Pursuant to CAFA, federal courts have original jurisdiction over class actions in which the amount in controversy exceeds the sum or value of $5 million and there is minimal or incomplete

---

Paul McKinnon, Jr., dated July 23, 2009 ("McKinnon Decl.") ¶ 4.

[2] *See* Exhibit 1, attached hereto.

diversity. *See* 28 U.S.C. § 1332(d)(2); *see also, e.g., Pisciotta v. Old Nat'l Bancorp*, 449 F.3d 629, 633 (7th Cir. 2007).

6.      As a threshold matter, Plaintiff is a resident and citizen of the State of Connecticut. *See* Compl. ¶ 2. *See also id.* ¶ 28 ("class members are geographically dispersed across the country"). The Lincoln National Life Insurance Company is a corporation organized under the laws of the State of Indiana, with its principal place of business and corporate headquarters in the State of Indiana, and so is a citizen of the State of Indiana. McKinnon Decl. ¶ 5. Accordingly, the diversity of citizenship necessary for removal of this putative class action is met. *See* § 1332(d)(2)(A) ("any member of a class of plaintiffs is a citizen of a State different from any defendant").

7.      This case was filed as a nationwide putative class action under Rule 23 of the Indiana Rules of Trial Procedure, which is similar to Rule 23 of the Federal Rules of Civil Procedure, and authorizes an action to be brought by one or more representative persons as a putative class action. *See* Compl. ¶¶ 26-34. Specifically, Plaintiff purports to bring this action "on behalf of himself and as a representative of" a putative class comprised of:

> All persons who purchased a life insurance policy constituting a security *from Defendant or its predecessors* in interest during the applicable statute of limitations that contains 1) a Cost of Insurance charge; 2) additional but separate policy charges or expenses; 3) any investment, interest-bearing, or savings component; and (4) a death benefit.

*Id.* ¶ 26 (emphasis added). Plaintiff's Chubb Life Insurance Company of America-issued flexible variable life insurance policy is an Ensemble II Variable Universal Life Insurance policy. *See* McKinnon Decl. ¶ 3. The Complaint, however, which does not set forth a precise time period regarding the issuance of the relevant policies or the deduction of allegedly improper Cost of Insurance ("COI") charges, is patently broad, eschewing any inclination to limit the putative class to purchasers of the specific type of life insurance policy Plaintiff owns. *See id.* ¶

26. Indeed, assuming all of the allegations of the Complaint to be true, and disregarding each and every defense of Lincoln National, most every variable universal life insurance policy issued by it or a predecessor entity would be at issue. McKinnon Decl. ¶ 7.[3] Moreover, the Complaint itself asserts that "the persons who fall within the Class number in at least the thousands." Compl. ¶ 28.

8.     It is, thus, indisputable that Plaintiff's allegations alone reflect that the requisite minimum number of putative class members exists, *see* 28 U.S.C. § 1332(d)(5)(B) (CAFA does not apply where "the number of members of all proposed plaintiff classes in the aggregate is less than 100"), and the case is a "class action" as defined in 28 U.S.C. § 1332(d)(1)(B).

9.     The Complaint is predicated on an alleged improper deduction of COI charges that exceed the amounts allegedly permitted by the terms of the life insurance policies at issue in this litigation. *See* Compl. ¶¶ 21-25. The Complaint is silent, however, with respect to the damages amount Plaintiff believes he or the putative class are entitled to recover. While Lincoln National disputes the Complaint's allegations and denies any wrongdoing, Lincoln National has conducted a good faith analysis based on a good faith reading of the Complaint in effort to assess "what the stakes of the litigation ... are given plaintiff's actual demands." *See Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005). A reasonable reading of Plaintiff's Complaint makes the breadth of the putative class Plaintiff seeks to represent undeniable – "[a]ll persons who purchased a life insurance policy constituting a security *from Defendant or its predecessors* in interest during the applicable statute of limitations", Compl. ¶26 (emphasis added), potentially encompassing all purchasers of every variable life insurance policy issued by Lincoln National or its predecessors (*see* n.1, *supra*), during an unspecified period of

---

[3] Among the defenses and arguments it does not waive in connection with this removal effort, Lincoln National notes that Plaintiff would lack standing to represent a class of purchasers of products beyond the specific Chubb Life Insurance Company of America-issued Ensemble II Variable Universal Life Insurance policy he owns.

time.[4]  Lincoln National's analysis of mere subsets of the policies purchased by the putative class as defined by Plaintiff establishes "stakes of the litigation" that greatly exceed CAFA's $5 million threshold amount.  *See* McKinnon Decl. ¶¶ 8 - 10.[5]

10.     Specifically, while Plaintiff's allegations regarding the types of policies included in the putative class are broad,  Lincoln National first sought to conduct a conservative analysis, limited to policies of the specific type purchased by Plaintiff: Ensemble II Variable Universal Life Insurance policies issued by Chubb, pursuant to policy code number V1002.[6]   The Complaint does not seek to impose a precise time limitation on the class Plaintiff seeks to represent with respect to the date of issuance of the relevant policies, nor with respect to the period during which the COI charges were allegedly improperly deducted.  However, based on available electronic records, Lincoln National's good faith analysis reflects that simply during the period from January 1, 2003 to December 31, 2008, approximately $157 million in COI charges were deducted in connection with the estimated 26,000 Ensemble II Variable Universal Life Insurance policies issued pursuant to policy code number V1002 policies that were active as of March 31, 2003.  McKinnon Decl. ¶ 8.

---

[4] Lincoln National notes that the limitations period for a breach of contract action under, for example, Indiana law is 10 years.  IC 34-11-2-11.  It is not clear, however, what Plaintiff had in mind when referencing the "applicable statue of limitations" with respect to his individual claims or those of the putative class.  Moreover, the existence of potential affirmative defenses may not be used to "whittle down" the amount in controversy.  *See Travelers Cas. and Sur. Co. of Am., Inc. v. Nw. Mut. Life Ins. Co.*, 480 F.3d 499, 501 (7th Cir. 2007).

[5] The Court may consider evidence submitted with this Notice of Removal.  *See, e.g., Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541-42 (7th Cir. 2006) (noting that removing defendant can "establish what the plaintiff stands to recover" in several ways, including "by contentions interrogatories or admissions in state court; by calculation from the complaint's allegations []; by reference to the plaintiff's informal estimates or settlement demands []; or by introducing evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiffs demands []", and noting that the list "is not exclusive"); *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 985-86 (7th Cir. 2008) (reversing order of remand in action where defendant's removal was based on affidavit evidence); *Hart v. Conagra Foods, Inc.*, No. 1:07-cv-0395-JDT-WTL, 2007 WL 2286131, at *1 (S.D. Ind. Aug. 7, 2007) ("[T]o remove a case, a defendant need only state a basis for its estimate.  It can fulfill this requirement by pointing to relevant contentions or admissions, settlement demands, by calculation of the complaint's allegations, or in any number of ways that might be appropriate.") (citing *Meridian Sec. Ins. Co.*).

[6] Each Chubb-issued Ensemble II Variable Universal Life Insurance policy was issued pursuant to one of four distinct policy codes; Plaintiff's Contract was issued pursuant to one of those, policy code V1002.  McKinnon Decl. ¶ 3.

11.     Lincoln National further conducted a separate but still conservative analysis, this time expanded to cover all variable universal life insurance policies issued and or administered by Jefferson Pilot Financial Insurance Company after its acquisition of Chubb but prior to its merger into Lincoln National ("Legacy Jefferson Pilot Variable Universal Life policies"); this expanded block of policies would include, but not be limited to, the variable life insurance policy-type purchased by Plaintiff.  Based on available electronic records, Lincoln National's good faith analysis of this block of policies reflects that simply during the period from January 1, 2003 to December 31, 2008, approximately $580 million in COI charges were deducted in connection with the estimated 76,000 Legacy Jefferson Pilot Variable Universal Life policies that were active as of March 31, 2003.   McKinnon Decl. ¶ 9.

12.     The Complaint's Prayer for Relief clause seeks to recover "compensatory damages and restitution as appropriate and available … based on, *inter alia*, 'Cost of Insurance' charges that exceed the amounts permitted by the terms of the Policies", which could conceivably include the entirety of these sums.

13.     While both of the aforementioned good faith estimates of potential compensatory amounts are more than sufficient to satisfy CAFA's $5 million requirement, importantly, each reflects an analysis of only a portion of the thousands of policies potentially at issue based on Plaintiff's allegations.  Specifically, the COI charge deductions estimated and policy counts set forth above do not include the approximately 59,000 policies issued by Lincoln National that were active as of December 31, 2008, which, based on Plaintiff's allegations, would also fit the definition of the class he seeks to represent.  McKinnon Decl. ¶ 10.  *Cf. Spivey v. Vertrue, Inc.*, 528 F.3d 982, 985-86 (7th Cir. 2008) (reversing order of remand in action involving allegations that the defendant – a marketer that provided its customers with discounts – submitted

unauthorized charges to its customers' credit cards through 22 programs; in support of its removal of the action to federal court, Vertrue had pointed to calculations that its total billings of $7 million for a mere subset of the programs at issue – four of the 22 programs in one state alone – greatly exceeded CAFA's $5 million threshold); *Pastor v. State Farm Mut. Auto. Ins. Co.*, 487 F.3d 1042, 1046-47 (7th Cir. 2007) (noting that the sheer size of a putative class "consist[ing] of many thousands of persons . . . makes it reasonably likely that the suit meets the Class Action Fairness Act's requirement of a $5 million minimum amount in controversy").   Lincoln National's conservative good faith analysis, thus, sufficiently demonstrates "plausibly how the stakes exceed $5 million." *See Spivey*, 528 F.3d at 986. *See also Brill*, 427 F.3d at 449 ("reasonable probability that the stakes exceed the minimum" is sufficient).

14.    None of CAFA's exceptions are applicable here.  For example, this action may not be remanded under § 1332(d)(3) or (d)(4) because more than two-thirds of the members of the proposed plaintiff class are citizens of States other than the State in which the action was originally filed. *See* Compl. ¶ 28 ("class members are geographically dispersed across the country").  Moreover, while Plaintiff claims his contract "is an 'investment contract' constituting a security as defined in 15 U.S.C. § 77b(a)(1) and referenced in 28 U.S.C. § 1332(d)(9)(C)", Compl. ¶ 11, this putative class action may not be remanded under § 1332(d)(9)(C) because it does not "solely involve" a claim relating to the rights, duties, and obligations relating to or created by or pursuant to a security as defined under § 2(a)(1) of the Securities Act of 1933.  In any event, it is Plaintiff's burden to prove exceptions to the Court's removal jurisdiction. *See Breuer v. Jim's Concrete of Brevard, Inc.*, 457 U.S. 675, 698 (2003) ("there has been no question that whenever the subject matter of an action qualifies it for removal, the burden is on a plaintiff to find an express exception"); *see also Hart v. FedEx Ground Package Sys., Inc.*, 457 F.3d 675,

681 (7th Cir. 2006) ("plaintiff has the *burden of persuasion* on the question whether the home-state or local controversy exceptions apply") (emphasis added).

15.     CAFA's legislative history makes clear that doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. *See* S. Rep. 109-14, at 43 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3 ("Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant."); *cf. Hart*, 457 F.3d at 681 (recognizing this legislative history). *See also* S. Rep. 109-14, at 35 (the intent of CAFA "is to strongly favor the exercise of federal diversity jurisdiction over class actions with interstate ramifications.").

16.     Based on the foregoing, and without conceding liability or damages, this Court has original jurisdiction over the claims asserted by Plaintiff because this putative class action presents a dispute between diverse parties in which the matter in controversy exceeds the sum or value of $5 million, exclusive of interest and costs. § 1332(d)(2)(A). Accordingly, this case is removable under 28 U.S.C. § 1441(a) and 28 U.S.C. § 1453(b).

WHEREFORE, Lincoln National removes this matter from the Circuit Court of Allen County, Indiana, and respectfully requests that this Court exercise jurisdiction over this case, and that the Court grant Lincoln National all other appropriate relief.

Dated:  July 24, 2009.                    Respectfully submitted,

                          By: _____

                              Kathleen M. Anderson (#16351-92)
                              Jason T. Clagg (#24123-02)
                              BARNES & THORNBURG LLP
                              600 One Summit Square
                              Fort Wayne, IN 46802
                              Telephone:  (260) 425-4657
                              Facsimile: (260) 424-8316
                              kathleen.anderson@btlaw.com
                              jason.clagg @btlaw.com

                              *Attorneys for Lincoln National*
                              *Life Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served by First Class Mail, postage prepaid, on July 24, 2009 to:

Matthew J. Connelly, Esq.
BLUME, CONNELLY, JORDAN, STUCKY & LAUER LLP
110 W. Berry Street, Suite 1700
Fort Wayne, IN 46802

Stephen R. Miller, Esq.
John J. Schirger, Eq.
Matthew W. Lytle, Esq.
MILLER SCHIRGER, LLC
Suite 630
800 West 47th Street
Kansas City, MO  64112

Patrick J. Stueve, Esq.
Richard M. Paul, III, Esq.
Lee R. Anderson, Esq.
STUEVE SIEGEL HANSON LLP
Suite 200
460 Nichols Road
Kansas City, MO  64112

                          By: _____
                                  Jason T. Clagg

                                      9

STATE OF INDIANA     )          IN THE ALLEN CIRCUIT COURT
                      )SS:
COUNTY OF ALLEN     )          CAUSE NUMBER:02C01-090*6* PL-*73*

PETER S. BEZICH, individually and on behalf )
Of a class of others similarly situated )
                              )
               Plaintiff,     )
vs.                          )
                              )
THE LINCOLN NATIONAL LIFE     )
INSURANCE COMPANY             )
                              )
              Defendant.    )

## COMPLAINT-CLASS ACTION

Plaintiff, individually and on behalf of all others similarly situated, for his Complaint against defendant The Lincoln National Life Insurance Company, states:

1.     This is a class action for breach of contract to recover amounts that Defendant has charged Plaintiff and the Class on their life insurance policies in excess of the fees permitted by the express terms of the policies.

### Parties, Jurisdiction, and Venue

2.     Plaintiff Peter S. Bezich is a resident of Connecticut.

3.     Plaintiff purchased from Chubb Life Insurance Company of America, Defendant's predecessor in interest, a "flexible premium variable life insurance" policy ("Policy") number 506017735, policy date December 27, 1996 ("Policy Date"), with an initial face amount of $200,000.



1

4.     On or about May 1, 1998, the policy was amended by changing all references to "Chubb" or "Chubb Life" or "Chubb Life Insurance Company of America" to "Jefferson Pilot Financial Insurance Company."

5.     On or about July 2, 2007, Jefferson Pilot Financial Insurance Company merged into The Lincoln National Life Insurance Company.

6.     Pursuant to Policy amendments and corporate mergers, The Lincoln National Life Insurance Company is the effective and liable insurer of the Policy.

7.     Defendant The Lincoln National Life Insurance Company is a corporation organized under the laws of the State of Indiana.  Defendant maintains its principal place of business in Fort Wayne, Indiana.

8.     Venue is proper in this Court pursuant to Rule of Trial Procedure 75.

### General Allegations

9.     A true and accurate copy of Plaintiff's Policy is attached hereto as Exhibit A, and incorporated herein by reference.

10.    The Policy is a contract between Plaintiff and Defendant.

11.    The Policy is an "investment contract" constituting a security as defined in 15 U.S.C. § 77b(a)(1) and referenced in 28 U.S.C. § 1332(d)(9)(C).

12.    Defendant sold Plaintiff and the Class defined herein life insurance policies containing an investment, savings or interest-bearing component.

13.    Under the terms of such policies, premium payments are credited to the accumulated value of the policy.

2

14.     The accumulated value is further credited with interest or investment earnings, and the policy is debited each month by various deductions.

15.     The Policy identifies the following "monthly deductions" due each policy month as follows: a "Cost of Insurance" ("COI") charge; administrative charges; and rider or benefit charges, if any.

16.     The Policy's "Cost of Insurance" charge is based on expected mortality.

17.     As commonly used in the insurance industry, "Cost of Insurance" means a mortality charge for the life of the insured.

18.     The Internal Revenue Service considers the Cost of Insurance to be the insurance company's mortality cost, i.e. the charge "necessary from each policy to meet the death benefits anticipated during that year." *Internal Revenue Service, Insurance Industry Handbook*, §4.42.6.1.1 (349).

19.     The American Institute of Certified Public Accountants recognizes the Cost of Insurance charge is "the portion" of premiums from each policyholder "set aside to pay claims." 360 Degrees of Financial Literacy, *"Types of Life Insurance Policies,"* American Institution of Certified Public Accountants.

20.     A mortality charge can be specifically calculated based on industry accepted actuarial determinations.

21.     Defendant's Cost of Insurance charges are of such an amount that, on information and belief, Plaintiff alleges that Defendant has deducted Cost of Insurance charges in excess of Defendant's true mortality costs.

3

22.    The Policy specifically defines the charges that Defendant may deduct each month from premiums or the accumulated value of the account.

23.    Defendant may deduct only those charges allowed by the contract.

24.    Beginning at or after the commencement of the policy term, in breach of the policy provisions, each month Defendant deducted Cost of Insurance amounts unrelated to mortality.

25.    By deducting amounts in excess of those permitted by the Policy, Defendant has damaged Plaintiff and all other similarly situated policyholders.   These damages are continuing in nature.

### Class Allegations

26.    Plaintiff brings this case as a class action under Rule of Trial Procedure 23, on behalf of himself and as a representative of the following persons (the "Class"):

> All persons who purchased a life insurance policy constituting a security from Defendant or its predecessors in interest during the applicable statute of limitations that contains: 1) a Cost of Insurance charge; 2) additional but separate policy charges or expenses; 3) any investment, interest-bearing, or savings component; and (4) a death benefit.

Excluded from the Class is the Defendant, any entity in which the Defendant has a controlling interest, any of the officers, directors, or employees of the Defendant, the legal representatives, heirs, successors, and assigns of the Defendant, anyone employed with Plaintiff's counsel's firms, and any Judge to whom this case is assigned, and his or her immediate family.

27.    Plaintiff's claim satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action under Indiana Rule of Trial Procedure 23, as set forth more fully herein.

4

28.     On information and belief, the persons who fall within the Class number in at least the thousands, and thus the numerosity standard is satisfied. Because class members are geographically dispersed across the country, joinder of all class members in a single action is impracticable. Class members may be informed of the pendency of this class action through direct mail.

29.     There are questions of fact and law common to the Class that predominate over any questions affecting only individual members. The questions of law and fact common to the Class arising from Defendant's actions include, without limitation, the following:

(i)     Whether Defendant charged amounts for "Cost of Insurance" that were unrelated to mortality;

(ii)    Whether Defendant, by charging amounts for "Cost of Insurance" that were unrelated to mortality, breached the express and/or implied terms of its policies;

(iii)   Whether the Plaintiff Class sustained damages as a result of Defendant's breach of contract; and

(iv)    Whether the Plaintiff Class is entitled to damages, restitution, and/or other equitable relief as a remedy for Defendant's breach of contract.

30.     The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the claims asserted herein.

31.     Plaintiff's claims are typical of those of the Class in that Class members purchased policies containing the same or similar limitations on the amount that Defendant could charge its policyholders for COI charges.

5

32. A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendant has acted or refused to act on grounds generally applicable to the Class. The presentation of separate actions by individual Class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of Class members to protect their interests.

33. Plaintiff is an adequate representative of the Class because he is a member of the Class and his interests do not conflict with the interests of those he seeks to represent. The interests of the class members will be fairly and adequately protected by Plaintiff and his counsel, who have extensive experience prosecuting complex class litigation.

34. Maintenance of this action as a class action is a fair and efficient method for adjudicating this controversy. It would be impracticable and undesirable for each member of the Class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

### Count I: Breach of Contract

35. Plaintiff incorporates herein by reference the above allegations.

36. Plaintiff and the Class purchased life insurance policies from Defendant.

37. Plaintiff and the Class substantially performed their obligations under the terms of the policies.

6

38.     The life insurance policies provided that the "Monthly Deduction" to keep the Policies in force would consist of (1) the Cost of Insurance charge, (2) administrative charges, and (3) rider or benefit charges, if any.

39.     Plaintiff's and the Class members' policies and industry standards define the Cost of Insurance charge as a mortality charge.

40.     On information and belief, Defendant has deducted Cost of Insurance charges in excess of mortality charges, in breach of the terms of the policies.

41.     Plaintiff and the Class were damaged by this breach.

### Prayer for Relief

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, requests relief as follows: an order certifying this case as a class action under Ind. R. Trial Proc. 23; compensatory damages and restitution as appropriate and available in an amount to be proven at trial based on, *inter alia*, "Cost of Insurance" charges that exceed the amounts permitted by the terms of the Policies; costs; pre- and post-judgment interest; and such other relief as the Court deems proper.

### Demand for Jury Trial

Plaintiff hereby requests a trial by jury of all issues triable by jury.

7

Dated: _6·17·09_

Respectfully submitted,

Matthew J. Connelly #3332-02
**BLUME CONNELLY JORDAN**
**STUCKY & LAUER LLP**
110 W. Berry St., Ste. 1700
Ft. Wayne, IN 46802
Tel:   260-423-3525
Fax:   260-423-3529

Stephen R. Miller
John J. Schirger
Matthew W. Lytle
**MILLER SCHIRGER, LLC**
800 W. 47th St., Ste. 630
Kansas City, MO 64112
Tel:   816-561-6500
Fax:   816-561-6501

Patrick J. Stueve
Richard M. Paul III
Lee R. Anderson
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112
Tel:   816-714-7100
Fax:   816-714-7101

**ATTORNEYS FOR PLAINTIFF**








**CHUBB**
**LifeAmerica**

**Chubb Life Insurance Company of America**
Home Office; One Granite Place, P.O. Box 515, Concord, New Hampshire 03302
Service Office: P.O. Box 1369, Chattanooga, Tennessee 37401

Chubb Life Insurance Company of America (A stock company, herein called the Company), will pay the Death Benefit specified on page 6 to the Beneficiary on receipt of due proof of the Insured's death, subject to the provisions of this and the following pages, all of which are a part of this policy.

This is a Flexible Premium Variable Life Insurance Policy. The Specified Amount may be increased or decreased by the Owner. Net Premiums will be allocated to the General Account or to one or more divisions of Chubb Separate Account A (herein called Separate Account A) as determined by the Owner.

**THE POLICY'S ACCUMULATION VALUE IN EACH DIVISION OF SEPARATE ACCOUNT A IS BASED ON THE INVESTMENT EXPERIENCE OF THAT DIVISION AND MAY INCREASE OR DECREASE DAILY. THE ACCUMULATION VALUE IS NOT GUARANTEED AS TO DOLLAR AMOUNT.**

The policy's accumulation value in the General Account will earn interest daily at a minimum guaranteed effective rate of 4 1/2%. Interest in excess of the guaranteed rate may be applied in the calculation of the accumulation value at such increased rates as the Company may determine.

**THE AMOUNT OF DEATH BENEFIT OR THE DURATION OF THE DEATH BENEFIT MAY VARY UNDER THE CONDITIONS DESCRIBED ON PAGES 6 AND 7.**

This policy is a legal contract between the Owner and Chubb Life Insurance Company of America.

READ YOUR POLICY CAREFULLY

**RIGHT TO CANCEL** - Please examine this policy carefully. The Owner may cancel this policy by returning it to Chubb or to the agent through whom it was purchased within 10 days after the date the Owner receives the policy, within 45 days of the date of the execution of the application for insurance, or within 10 days after mailing or personal delivery of a Notice of the Right of Withdrawal, whichever is later. If the policy is returned, it will be deemed void from the beginning and any premium paid for it will be refunded within 7 days.

Executed for the Company at its Home Office in Concord, New Hampshire, as of the policy date.

_Theresa M. Stone_                           _Frederick S. Condon_

President                                        Secretary

Insured:  BEZICH, PETER S
Policy Number:  506017735

Flexible Premium Variable Life Insurance Policy. Flexible Premiums Payable
Until the Maturity Date or Until Prior Death. Adjustable Death Benefit.
Insurance Payable at Death. Some Benefits Reflect Investment Results.
Additional Benefits, if any, as indicated on Page 3.
Non-Participating, No Dividends.

## GUIDE TO POLICY PROVISIONS

| | Page |
|---|---|
| Administrative Charges | 3 |
| Age at Issue | 3 |
| Beneficiary | 3 |
| Death Benefit Option | 3 |
| Death Benefit Provisions: | |
| Death Benefit | 6 |
| Changes in Existing Insurance | |
| Coverage | 7 |
| Change of Maturity Date | 7 |
| General Provisions: | |
| Contract | 8 |
| Ownership | 8 |
| Incontestability | 8 |
| Suicide | 8 |
| Misstatement of Age | 8 |
| Beneficiary | 9 |
| Assignment | 9 |
| Proceeds | 9 |
| Payment of Proceeds | 9 |
| Postponement of Payments | 9 |
| Age | 10 |
| Modification | 10 |
| Policy Date | 10 |
| Effective Date of Coverage | 10 |
| Termination | 10 |
| Maturity Date | 10 |
| Annual Report | 10 |
| Non-Participating | 10 |
| Guaranteed Monthly Cost of | |
| Insurance Rates | 4 |
| Initial Specified Amount | 3 |
| Insured | 3 |
| Nonforfeiture Values: | |
| Accumulation Value | 14 |
| Cash Value | 14 |
| Surrender Charge | 14 |
| Separate Account Accumulation | |
| Values | 14 |
| Net Investment Factor | 15 |

| | Page |
|---|---|
| Nonforfeiture Values (cont.): | |
| General Account Accumulation | |
| Value | 15 |
| General Account Interest Rate | 15 |
| Monthly Deduction | 16 |
| Cost of Insurance | 16 |
| Cost of Insurance Rates | 16 |
| Insufficient Cash Value | 16 |
| Continuation of Insurance | 16 |
| Surrender | 16 |
| Withdrawal of Cash Value | |
| (Withdrawal) | 17 |
| Basis of Computations | 17 |
| Illustration of Benefits and | |
| Values | 17 |
| Owner | 3 |
| Policy Date | 3 |
| Policy Loans: | |
| Policy Loans | 11 |
| Policy Loan Interest | 11 |
| Debt | 11 |
| Policy Loan Repayment | 11 |
| Premium Provisions: | |
| Premium Payments | 5 |
| Planned Periodic Premiums | 5 |
| Net Premiums | 5 |
| Allocation of Net Premiums | 5 |
| Unscheduled Premiums | 5 |
| Grace Period | 5 |
| Reinstatement | 6 |
| Separate Account Provisions: | |
| Separate Account | 12 |
| Divisions | 12 |
| Transfers | 12,13 |
| Addition, Deletion, or | |
| Substitution of Investments | 13 |
| Settlement Options | 18,19 |
| Right to Cancel | 1 |

A copy of the application will be found after page 18. Any other benefit agreements will also be found after page 18.

```
            INSURED BEZICH,PETER S              MATURITY DATE 12-27-2042
            OWNER INSURED                       POLICY NUMBER 506017735
        POLICY DATE 12/27/96                 PREMIUM FREQUENCY ANNUAL
        AGE AT ISSUE 49 M                     DEATH BENEFIT OPTION I
        RATING CLASS SMOKER STANDARD
```

BENEFICIARY: AS STATED IN APPLICATION OR ENDORSEMENT ATTACHED.


                                                      PLANNED
                                                      PERIODIC
                                                      PREMIUM
LIFE INSURANCE

  $200,000 INITIAL SPECIFIED AMOUNT                   $1,000.00



FLEXIBLE PREMIUM VARIABLE LIFE INSURANCE

IT IS POSSIBLE THAT COVERAGE WILL EXPIRE PRIOR TO THE MATURITY
DATE CHOSEN WHEN EITHER NO PREMIUMS ARE PAID FOLLOWING PAYMENT
OF THE INITIAL PREMIUM OR SUBSEQUENT PREMIUMS ARE INSUFFICIENT
TO CONTINUE COVERAGE TO SUCH DATE.  IF CURRENT VALUES CHANGE,
THIS WILL ALSO AFFECT COVERAGE.

THE POLICY'S ACCUMULATION VALUE IN THE GENERAL ACCOUNT WILL EARN
INTEREST DAILY AT A MINIMUM GUARANTEED EFFECTIVE RATE OF 4-1/2%. THE
POLICY'S ACCUMULATION VALUE HELD IN THE GENERAL ACCOUNT FOR POLICY
LOAN COLLATERAL WILL EARN INTEREST DAILY AT THE LESSER OF AN EFFECTIVE
RATE OF 6% OR THE INTEREST RATE CURRENTLY CREDITED.

ALLOCATIONS OF NET PREMIUM:     15.0% WORLD GROWTH STOCK DIVISION II
                                 0.0% MONEY MARKET DIVISION II
                                 0.0% GOLD STOCK DIVISION II
                                 0.0% BOND DIVISION II
                                 0.0% DOMESTIC GROWTH STOCK DIVISION II
                                15.0% GROWTH AND INCOME DIVISION II
                                20.0% CAPITAL GROWTH DIVISION II
                                 0.0% BALANCED DIVISION II
                                10.0% EMERGING GROWTH DIVISION II
                                 0.0% INTERNATIONAL DIVISION II
                                20.0% CONTRAFUND DIVISION II
                                 0.0% HIGH INCOME DIVISION II
                                20.0% INDEX 500 DIVISION II
                                 0.0% GENERAL ACCOUNT


SELECTED EXPENSE CHARGES:

  1)  2.5% OF EACH PREMIUM PAID.

  2)  A MONTHLY ADMINISTRATIVE CHARGE. THIS CHARGE IS EQUAL TO
      $6.00 PER MONTH IN EACH POLICY YEAR.

  3)  COST OF INSURANCE AS DEFINED ON PAGE 16.

  4)  MORTALITY AND EXPENSE RISK CHARGE AS DEFINED ON PAGE 15.

  5)  SURRENDER CHARGE ON WITHDRAWAL OR SURRENDER AS DEFINED ON PAGE 14.

                                                            PAGE 3

RIDERS ATTACHED TO POLICY NUMBER: 506017735

TERMINAL ILLNESS ACCELERATED BENEFIT RIDER

.PAGE 3 CONTINUED

MAXIMUM SURRENDER PREMIUMS
PER $1,000 INITIAL SPECIFIED AMOUNT OR
PER $1,000 OF INCREASE IN THE SPECIFIED AMOUNT

| ISSUE AGE OR AGE AT INCREASE | PREMIUM | ISSUE AGE OR AGE AT INCREASE | PREMIUM | ISSUE AGE OR AGE AT INCREASE | PREMIUM |
|---|---|---|---|---|---|
| 00 | 3.19 | 29 | 9.86 | 58 | 44.46 |
| 01 | 3.12 | 30 | 10.34 | 59 | 46.98 |
| 02 | 3.14 | 31 | 10.84 | 60 | 49.67 |
| 03 | 3.25 | 32 | 11.38 | 61 | 52.54 |
| 04 | 3.50 | 33 | 11.95 | 62 | 55.60 |
| 05 | 3.64 | 34 | 12.56 | 63 | 58.84 |
| 06 | 3.79 | 35 | 13.20 | 64 | 62.28 |
| 07 | 3.95 | 36 | 13.89 | 65 | 65.91 |
| 08 | 4.12 | 37 | 14.61 | 66 | 69.75 |
| 09 | 4.30 | 38 | 15.38 | 67 | 73.81 |
| 10 | 4.50 | 39 | 16.19 | 68 | 78.13 |
| 11 | 4.70 | 40 | 17.05 | 69 | 82.74 |
| 12 | 4.92 | 41 | 17.95 | 70 | 87.68 |
| 13 | 5.16 | 42 | 18.90 | 71 | 92.97 |
| 14 | 5.38 | 43 | 19.91 | 72 | 98.62 |
| 15 | 5.61 | 44 | 20.98 | 73 | 104.62 |
| 16 | 5.84 | 45 | 22.10 | 74 | 110.96 |
| 17 | 6.06 | 46 | 23.28 | 75 | 117.61 |
| 18 | 6.29 | 47 | 24.54 | 76 | 122.60 |
| 19 | 6.53 | 48 | 25.87 | 77 | 129.37 |
| 20 | 6.77 | 49 | 27.28 | 78 | 136.44 |
| 21 | 7.03 | 50 | 28.78 | 79 | 143.94 |
| 22 | 7.31 | 51 | 30.37 | 80 | 151.95 |
| 23 | 7.60 | 52 | 32.06 | 81 | 160.56 |
| 24 | 7.91 | 53 | 33.85 | 82 | 169.80 |
| 25 | 8.25 | 54 | 35.74 | 83 | 179.73 |
| 26 | 8.61 | 55 | 37.74 | 84 | 190.36 |
| 27 | 9.00 | 56 | 39.85 | 85 | 201.84 |
| 28 | 9.41 | 57 | 42.09 | | |

PAGE 3A.

## TABLE OF MONTHLY GUARANTEED COST OF INSURANCE RATES PER $1000
### POLICY NUMBER 506017735

| AGE | MONTHLY RATE | AGE | MONTHLY RATE | AGE | MONTHLY RATE |
|-----|-----|-----|-----|-----|-----|
| 00 | .34845 | 35 | .21921 | 70 | 4.56071 |
| 01 | .08917 | 36 | .23422 | 71 | 4.94853 |
| 02 | .08251 | 37 | .25340 | 72 | 5.38973 |
| 03 | .08167 | 38 | .27508 | 73 | 5.88695 |
| 04 | .07917 | 39 | .30009 | 74 | 6.42941 |
| 05 | .07501 | 40 | .32844 | 75 | 7.02991 |
| 06 | .07167 | 41 | .36180 | 76 | 7.64974 |
| 07 | .06667 | 42 | .39599 | 77 | 8.27796 |
| 08 | .06334 | 43 | .43519 | 78 | 8.90442 |
| 09 | .06167 | 44 | .47606 | 79 | 9.54780 |
| 10 | .06084 | 45 | .52277 | 80 | 10.23622 |
| 11 | .06417 | 46 | .56949 | 81 | 10.98690 |
| 12 | .07084 | 47 | .62058 | 82 | 11.82145 |
| 13 | .08251 | 48 | .67379 | 83 | 12.74626 |
| 14 | .09584 | 49 | .75587 | 84 | 13.72670 |
| 15 | .13752 | 50 | .79229 | 85 | 14.73050 |
| 16 | .15586 | 51 | .87076 | 86 | 15.72512 |
| 17 | .17086 | 52 | .95257 | 87 | 16.69584 |
| 18 | .18005 | 53 | 1.04609 | 88 | 17.75732 |
| 19 | .18837 | 54 | 1.15132 | 89 | 18.80718 |
| 20 | .19254 | 55 | 1.26326 | 90 | 19.86094 |
| 21 | .19420 | 56 | 1.38441 | 91 | 20.93947 |
| 22 | .19170 | 57 | 1.50978 | 92 | 22.08818 |
| 23 | .18837 | 58 | 1.64353 | 93 | 23.56765 |
| 24 | .18420 | 59 | 1.78234 | 94 | 25.47888 |
| 25 | .17837 | 60 | 1.93624 | | |
| 26 | .17536 | 61 | 2.10944 | | |
| 27 | .17170 | 62 | 2.30447 | | |
| 28 | .17003 | 63 | 2.52553 | | |
| 29 | .17170 | 64 | 2.76931 | | |
| 30 | .17503 | 65 | 3.03334 | | |
| 31 | .18087 | 66 | 3.30841 | | |
| 32 | .18670 | 67 | 3.59706 | | |
| 33 | .19587 | 68 | 3.89427 | | |
| 34 | .20671 | 69 | 4.21099 | | |

M-S

PAGE 4

## PREMIUM PROVISIONS

**Premium Payments -** An initial premium is due and payable on the policy date. The initial premium must be large enough, after the deduction of the premium expense charge, to cover monthly deductions for at least three months. All premiums are payable at the Home Office of the Company or to an authorized agent of the Company in exchange for a receipt. This receipt must be signed by an elected officer of the Company and countersigned by such agent. The Company will not accept a premium payment less than $25.

**Planned Periodic Premium and Premium Frequency -** The Planned Periodic Premium and Premium Frequency, as shown on page 3, are selected by the Owner. The Planned Periodic Premium is the amount of premium the Owner intends to pay. The Premium Frequency is how often the Owner intends to pay the Planned Periodic Premium. Payment of the Planned Periodic Premium is at the option of the Owner.

The Company will send Planned Periodic Premium payment reminder notices. If the mode of premium payment is preauthorized check, government allotment or payroll deduction, notice of any Planned Periodic Premium due will not be sent.

Changes in Premium Frequency and increases or decreases in the Planned Periodic Premium may be made by the Owner by providing written notification to the Company. The Company reserves the right to limit the amount of any increase.

**Net Premium -** The net premium is equal to the premium paid multiplied by 97.5%. The deduction of 2.5% is a premium tax charge.

**Allocation of Net Premiums -** The Owner will determine the allocation of the net premiums among the General Account and the divisions of Separate Account A. The minimum percentage that may be allocated to any of these accounts is 10%.

**Unscheduled Premiums -** Premium payments in addition to the Planned Periodic Premium may be made at any time prior to the Maturity Date. The Company reserves the right to limit the number and amount of additional premium payments.

If there is an existing policy loan, premium payments in the amount of the Planned Periodic Premium, received at the Premium Frequency, will be applied as premium. Premium payments in excess of the Planned Periodic Premium or premium payments received other than at the Premium Frequency, will first be applied as policy loan repayments, then as premium when the policy loan is repaid.

**Grace Period -** The Company will allow a grace period of 61 days. Such grace period will begin on the day that the Company sends notice to the Owner and to the assignee, if any, that the cash value less any policy debt on a Monthly Anniversary Day is not enough to cover the monthly deduction for the month following such Monthly Anniversary Day. The cash value and monthly deduction are defined in the Nonforfeiture Provisions section.

The policy will terminate without value at the end of the grace period unless a premium large enough, after the deduction of the premium expense charge, to cover monthly deductions for at least three months is paid by the end of the grace period.

If the Insured dies during the grace period, the Company will deduct any overdue monthly deduction, which is applicable to the grace period, from the proceeds of the policy.

**Reinstatement** - If this policy terminates as provided in the Grace Period provision, it may be reinstated by the Owner at any time within five years after the date of termination. Reinstatement must occur before the maturity date. Reinstatement is subject to the following requirements:

(1) Receipt of satisfactory evidence of insurability by the Company.

(2) Payment of a premium large enough, after the deduction of the premium expense charge, to cover:

   (a) Monthly deductions for at least three policy months following the effective date of reinstatement.

   (b) Any due and unpaid monthly administrative charges.

(3) Payment or reinstatement of any debt against the policy which existed on the date of termination.

The effective date of a reinstated policy shall be the date the Company approves the application for reinstatement. Prior to receipt of the required premium for reinstatement, the accumulation value of the policy on the date of reinstatement shall be the accumulation value on the date of termination. The surrender factor in effect on reinstatement shall be as defined in the Surrender Charge section.

## DEATH BENEFIT PROVISIONS

**Death Benefit** - The death benefit provided by this policy depends on the Death Benefit Option in effect on the date of death. The Death Benefit Option for this policy is shown on page 3.

Option I - Under Option I, the death benefit shall be the greater of:

(1) The Specified Amount, or

(2) The accumulation value on the date of death multiplied by the corridor percentage.

Option II - Under Option II, the death benefit shall be equal to the Specified Amount plus the accumulation value on the date of death. However, the death benefit can never be less than the accumulation value on the date of death multiplied by the corridor percentage.

The corridor percentage depends on the attained age of the insured on the date of death.

| Attained Age | Corridor Percentage | Attained Age | Corridor Percentage | Attained Age | Corridor Percentage | Attained Age | Corridor Percentage |
|---|---|---|---|---|---|---|---|
| 40 & below | 250% | 52 | 171% | 64 | 122% | 91 | 104% |
| 41 | 243 | 53 | 164 | 65 | 120 | 92 | 103 |
| 42 | 236 | 54 | 157 | 66 | 119 | 93 | 102 |
| 43 | 229 | 55 | 150 | 67 | 118 | 94 | 101 |
| 44 | 222 | 56 | 146 | 68 | 117 | 95 | 100 |
| 45 | 215 | 57 | 142 | 69 | 116 | | |
| 46 | 209 | 58 | 138 | 70 | 115 | | |
| 47 | 203 | 59 | 134 | 71 | 113 | | |
| 48 | 197 | 60 | 130 | 72 | 111 | | |
| 49 | 191 | 61 | 128 | 73 | 109 | | |
| 50 | 185 | 62 | 126 | 74 | 107 | | |
| 51 | 178 | 63 | 124 | 75-90 | 105 | | |

**Changes in Existing Coverage -** The Initial Specified Amount is shown on page 3. At any time after the first policy anniversary, the Owner may, by written request, increase or decrease the Specified Amount. Any change is subject to the following conditions:

(1) Any decrease will become effective on the Monthly Anniversary Day that coincides with or next follows receipt of the request. Any such decrease will be deducted in the following order:

    (a) From the most recent Specified Amount increase, if any;

    (b) Successively from the next most recent Specified Amount increase, if any;

    (c) From the Initial Specified Amount.

(2) Any request for an increase must be applied for on a supplemental application and shall be subject to evidence of insurability satisfactory to the Company. The minimum increase in Specified Amount is $25,000.

(3) Any change approved by the Company will become effective on the effective date shown in the Supplemental Policy Specifications page, subject to deduction of the first month's cost of

insurance therefor from the accumulation value of this policy.

(4) The Owner may request in writing to change the Death Benefit Option. If the request is to change from Option I to Option II, the Specified Amount will be decreased by the amount of the accumulation value. Evidence of insurability satisfactory to the Company will be required on a change from Option I to Option II. If the request is to change from Option II to Option I, the Specified Amount will be increased by the amount of the accumulation value. The effective date of either change shall be the Monthly Anniversary Day that coincides with or next follows the day the request for change is received.

(5) The minimum decrease in Specified Amount, by the Owner, is $25,000. No such decrease may reduce the Specified Amount below $100,000.

**Change of Maturity Date -** The Maturity Date may be changed, upon written request by the Owner. The new Maturity Date may be any policy anniversary after the end of the tenth policy year and before the policy anniversary nearest the Insured's 95th birthday. However, the new Maturity Date must be at least twelve months from the date the Company receives a written request therefor from the Owner.

## GENERAL PROVISIONS

**The Contract** - This contract is made in consideration of the application and the payment of an initial premium sufficient to keep this policy in force for at least two months. A copy of the application is attached as a part of this policy. The entire contract consists of this policy and the application (and any supplemental applications for additional Specified Amounts). In the absence of fraud, all statements in an application shall be deemed representations and not warranties. No statement shall be used to avoid this policy or to defend against a claim unless it is contained in the application or in a supplemental application, and a copy of such application is attached to the policy when issued or made a part of the policy when changes in the Specified Amount become effective.

**Ownership of Policy** - The Insured shall be the Owner of the policy unless stated otherwise in the contract or changed at a later date. During the lifetime of the Insured all rights under this policy will be exercised by the Owner if the Owner has reserved the right to change the beneficiary. The Owner may name a new Owner or name a Contingent Owner. The Owner may change a Contingent Owner. If the Owner does not survive the Insured, the Contingent Owner will, if living, become the Owner. Upon proper written notice of the Owner any prior revocable designation of a Contingent Owner or beneficiary will be voided. Unless otherwise stated, all rights under this policy are vested in the Owner or in the Owner's assigns.

**Incontestability** - The Company will not contest this policy, except for any increase in the Specified Amount, after it has been in force during the lifetime of the Insured for a period of two years from its policy date. This provision does not apply to any benefits provided by a rider which grants disability benefits or an added benefit in the event death results from an accident. Any increase in the Specified Amount will not be contested after such increase has been in force during the lifetime of the Insured for two years following the effective date of such increase. Any increase will be contestable, within the two year period, only with regard to statements concerning the increase.

**Suicide** - This policy does not cover the risk of suicide within two years from the policy date, whether the insured is sane or insane. In such event, the only liability of the Company will be a refund of premiums paid without interest less any policy loan and less any partial surrender.

This policy does not cover the risk of suicide, whether sane or insane, within two years from the effective date of any increase in the Specified Amount with respect to such increase. In such event, the only liability of the Company will be a refund of the cost of insurance for such increase.

**Misstatement of Age or Sex**- If the age or sex of the Insured has been misstated, the amount payable under this policy by reason of the death of the Insured shall be equal to the sum of the following:

(1) The accumulation value on the date of death, less any debt.

(2) The death benefit, less the accumulation value on the date of death, multiplied by the ratio of (a) the cost of insurance actually deducted at the beginning of the policy month in which death occurs, to (b) the cost of insurance that should have been deducted at the Insured's true age or sex.

**Beneficiary** - At any time prior to the death of the Insured, the Owner may name or change a revocable beneficiary. If no beneficiary has been named, the Owner will be the beneficiary. A change of the Owner or beneficiary must be made in writing. To be binding on the Company, the change must be signed by the Owner and any irrevocable beneficiary and must be filed at the Home Office. Any such change shall take effect as of the date it was signed, subject to any payment made or other action taken by the Company before the change was filed. Unless otherwise provided, the proceeds to be paid at the death of the Insured shall be paid in equal shares to those named beneficiaries who survive the Insured. Payment will be made in the following order: (1) the primary beneficiaries, (2) any secondary beneficiaries, if no primary beneficiary survives the Insured, (3) any tertiary beneficiaries, if no primary or secondary beneficiary survives the Insured, (4) Owner, (5) the executors, administrators, or assigns of the Owner, if no named beneficiary survives the Insured. The terms "children" or "lawful children" of a person, when used to name beneficiaries, shall include only lawful children born to or legally adopted by that person.

**Assignment** - No assignment of this policy will be binding upon the Company until it has been filed at its Home Office. Each assignment will be subject to any payments made or action taken by the Company before it was filed. The Company will not be responsible for any assignment being valid or sufficient.

**Proceeds** - Proceeds means the amount payable on the maturity date, on the surrender of this policy before the maturity date or upon the death of the Insured.

The proceeds payable on the death of the Insured shall be the death benefit, less any debt. If the policy is surrendered, the proceeds shall be the cash value, less any debt. On the maturity date the proceeds shall be the cash value, less any debt. The proceeds are subject to the adjustment provided in the Misstatement of Age, Incontestability and Suicide provisions of this policy.

**Payment of Proceeds** - Unless an optional mode of settlement is elected, the proceeds payable on the death of the Insured shall be paid in one sum to the beneficiary.

Unless an optional mode of settlement is elected, any proceeds payable on the maturity date or upon surrender of this policy shall be paid in one sum to the Owner.

**Postponement of Payments** - The Company will usually pay any amounts payable on surrender, withdrawal, or policy loan allocated to Separate Account A within seven days after written notice is received. The Company will usually pay any death benefit proceeds within seven days after the Company receives due proof of death. Payment of any amount payable on surrender, withdrawal, policy loan, or death may be postponed whenever:

(1) The New York Stock Exchange is closed,other than customary week-end and holiday closings, or trading on the New York Stock Exchange is restricted as determined by the Securities and Exchange Commission;

(2) The Securities and Exchange Commission, by order, permits postponement for the protection of policyowners; or

(3) An emergency exists as determined by the Securities and Exchange Commission, as a result of which disposal of securities is not reasonably practicable or it is not reasonably practicable to determine the value of the net assets of Separate Account A.

Transfers may also be postponed under these circumstances.

The Company may defer the portion of any transfer, amount payable on surrender, withdrawal or policy loan from the General Account for not more than six months. However, no payment from the General Account to pay premiums on policies with the Company will be deferred.

**Age** - Age of the Insured, as used herein, refers to the age nearest birthday on the policy date. Attained age of the Insured means the age nearest birthday on the last policy anniversary.

**Modification** - Only an elected officer of the Company can, on behalf of the Company, change or modify this policy or waive any of the Company's rights or requirements. Any such changes must be made in writing.

**Policy Date** - The date shown on page 3, which is the date requested by the Owner or the later of the date of application or the date of any required medical examination. The policy date is the date from which policy years, policy months, and policy anniversaries will be determined.

**Effective Date of Coverage** - The effective date of coverage under this policy shall be as follows:

(1) For all coverage provided in the original application, the effective date shall be the policy date.

(2) For any increase or addition to coverage, the effective date shall be the date shown on the Supplemental Policy Specifications page. The effective date for such coverage shall begin on the policy Monthly Anniversary Day that coincides with or next follows the date the application for the increase or addition is approved by the Company.

**Termination** - All coverage under this policy shall terminate when any one of the following events occurs:

(1) The Owner requests that coverage terminate. (Such request will require a surrender of this policy.)

(2) The Insured dies.

(3) The policy matures.

(4) The grace period ends.

**Maturity Date** - Unless otherwise specified, the maturity date will be the policy anniversary nearest the Insured's 95th birthday. Coverage may expire before the maturity date if no premiums are paid after the initial premium or future premiums are not enough to continue coverage to such date.

**Annual Report** - Each year a report will be sent to the Owner which shows the current cash value, premiums paid and all charges since the last report, and outstanding policy loans.

**Non-Participating** - This policy does not share in any surplus distribution of the Company. No dividends are payable.

**Specified Amount** - The face amount of the policy, which is the minimum death benefit payable under the policy.

## POLICY LOANS

**Policy Loans -** After the first policy anniversary, a loan will be granted upon the sole security and assignment of this policy to the Company. The maximum loan amount is 90% of the cash value on the date of the loan. Any prior debts to the Company against this policy will be deducted from the amount advanced under the loan. Any outstanding debt will be deducted from the proceeds payable at the insured's death, on maturity, or on surrender.

The Owner may allocate the policy loan among the General Account and the divisions of Separate Account A. If the Owner does not specify the allocation, then the policy loan will be allocated among the General Account and the divisions of Separate Account A in the same proportion that the accumulation value in the General Account, less any debt, and the accumulation value in each division bears to the total accumulation value of the policy, less any debt, on the date of the policy loan. Accumulation value in each division equal to the policy loan allocated to each division will be transferred to the General Account and reduce the accumulation value in that division. If loan interest is not paid when due, an amount of accumulation value equal to the loan interest will also be transferred.

If the policy debt exceeds the policy's accumulation value in the General Account, the Company will transfer accumulation value equal to the excess debt from the divisions of Separate Account A to the General Account as security for the excess debt. The amount transferred will be allocated among the divisions in the same proportion that the accumulation value in each division bears to the policy's total accumulation value in all divisions of Separate Account A.

**Policy Loan Interest -** Interest on policy loans is payable at the effective rate of 8%, or at any lower rate established by the Company for any period during which the loan is outstanding. Loan interest accrues

on a daily basis from the date of the loan and is payable at the end of each policy year. Loan interest unpaid on a policy anniversary becomes loan principal.

The Company shall provide at least 30 days written notice to the Owner (or any other party designated by the Owner to receive notice under this policy) and any assignee recorded at the Home Office of any increase in the interest rate on loans outstanding 40 or more days prior to the effective date of the increase. As to loans made during the 40 days before the effective date of the policy loan interest rate increase, the Company shall notify the Owner and any assignee at the time the loan is made.

The effective date of any increase in such interest rate shall not be less than one year after the effective date of the establishment of the previous rate. If the interest rate is increased, the amount of such increase shall not exceed one percent per year.

Interest accrues on a daily basis from the date of the loan and is compounded annually. Interest unpaid on a policy anniversary becomes loan principal.

**Debt -** As used in this policy, debt means the principal of any loan outstanding against this policy, plus any accrued loan interest.

If the policy debt exceeds the cash value, the Company will send a notice by mail to the Owner and to the assignee, if any, at their addresses last reported to the Company. If the excess is not paid within 61 days from the date the notice is mailed, the policy will terminate without value.

**Policy Loan Repayment -** Any debt may be repaid, in whole or in part, at any time while this policy is in force. When a loan repayment is made, accumulation value securing the debt in the General Account equal to the loan repayment will be allocated among the General Account and divisions of Separate Account A using the same percentages used to allocate net premiums.

## SEPARATE ACCOUNT PROVISIONS

**Separate Account** - The variable benefits under this policy are provided through investments in Separate Account A. The Company established Separate Account A as a separate investment account to support variable life insurance contracts. The Company will not allocate assets to Separate Account A to support the operation of any contracts or policies that are not variable life insurance.

The assets of Separate Account A are owned by the Company. However, these assets are not part of the Company's General Account. Income, gains and losses, whether or not realized, from assets allocated to Separate Account A will be credited to or charged against the account without regard to the Company's other income, gains or losses.

Assets equal to the reserves and other liabilities of Separate Account A will not be charged with liabilities that arise from any other business the Company may conduct. The Company shall have the right to transfer to its General Account any assets of Separate Account A which are in excess of such reserves and other policy liabilities.

Separate Account A is registered with the Securities and Exchange Commission as a unit investment trust under the Investment Company Act of 1940. Separate Account A is also subject to the laws of the State of New Hampshire which regulate the operations of insurance companies incorporated in New Hampshire. The investment policy of Separate Account A will not be changed without the approval of the Insurance Commissioner of the State of New Hampshire. The approval process is on file with the Insurance Commissioner of the state in which this policy was delivered.

**Divisions** - Separate Account A has several divisions. Each division will buy shares of a separate series of Chubb America Fund, Inc. Each series represents a separate investment portfolio of Chubb America Fund, Inc. All divisions of Separate Account A are shown on page 3. The Owner will determine the percentage of net premiums which will be allocated to each division.

Income, gains and losses, whether or not realized, from the assets of each division of Separate Account A are credited to or charged against that division without regard to income, gains or losses in other divisions of Separate Account A or in the General Account.

The Company will value the assets of each division of Separate Account A at the end of each valuation period. A valuation period is the period between two successive valuation dates. A valuation date is each day that the New York Stock Exchange is open for business or any other day in which there is material change in the value of the assets in Separate Account A.

**Transfers** - The Owner may transfer amounts between the General Account and the divisions of Separate Account A or among the divisions of Separate Account A by sending a written request to the Company. The total amount transferred must be at least $250. No amounts under $250 may be transferred out of any division of Separate Account A or the General Account unless such lesser amount constitutes the entire balance. A transfer charge equal to the lesser of $25 or 10% of the amount transferred will be imposed each time amounts are transferred, except with respect to policy loans. The transfer charge will be deducted from the amount that is transferred. The Company will make transfers so that the accumulation value on the date of transfer will not be affected by the transfer except to the extent of the transfer charge. The Company may revoke or modify the transfer privilege at any time, including the minimum amount transferable and the transfer charge.

**Transfers (continued) -**

As long as any portion of the policy's accumulation value is allocated to a division of Separate Account A, the policy's accumulation value and cash value will reflect the investment performance of the chosen division(s) of Separate Account A. The death benefit may also reflect the performance of the chosen division(s) of Separate Account A.

At any time, the Owner may transfer 100% of the policy's accumulation value to the General Account. While 100% of the policy's accumulation value is allocated to the General Account, minimum benefits for the policy will be fixed and guaranteed.

No transfer charge will be imposed for a transfer of all accumulation value in Separate Account A to the General Account. However, any transfer from the General Account to the division(s) of Separate Account A will be subject to the transfer charge.

**Addition, Deletion, or Substitution of Investments -** The Company reserves the right, subject to compliance with applicable law, to make additions to, deletions from, or substitutions for the shares of a series that are held by Separate Account A or that Separate Account A may purchase. The Company reserves the right to eliminate the shares of any of the series of Chubb America Fund, Inc. and to substitute shares of another series of Chubb America Fund, Inc. or of another open-end, registered investment company, if the shares or series are no longer available for investment or if in the Company's judgement, further investment in any eligible series should become inappropriate in view of the purposes of the policy. The Company will not substitute any shares attributable to the Owner's interest in a division of Separate Account A without notice to the Owner and prior approval of the Securities and Exchange Commission, to the extent required by the Investment Company Act of 1940. This shall not prevent Separate Account A from purchasing other securities for other series or classes of policies, or from permitting conversion between series or classes of policies or contracts on the basis of requests made by owners.

The Company reserves the right to establish additional divisions of Separate Account A, each of which would invest in a new series of Chubb America Fund, Inc. or in shares of another open-end investment company. The Company also reserves the right to eliminate existing divisions of Separate Account A.

If the Company considers it to be in the best interest of persons having voting privileges under the policies, Separate Account A may be operated as a management company under the Investment Company Act of 1940; or it may be deregistered under that Act in the event registration is no longer required or it may be combined with other separate accounts.

## NONFORFEITURE VALUES

**Accumulation Value -** The accumulation value of the policy is equal to the total of the policy's accumulation value in the General Account and the policy's accumulation value in divisions of Separate Account A.

**Cash Value -** The cash value is equal to the accumulation value less a surrender charge.

**Surrender Charge -** The surrender charge for the initial Specified Amount is calculated by multiplying the surrender factor (shown below) by the lesser of (1) or (2), where:

(1) is the total premiums paid in the first policy year;

(2) is the Maximum Surrender Premium for the issue age, as shown in the table on page 3A, multiplied by the initial Specified Amount.

The surrender factor will vary by policy year according to the following table:

| Policy Year | 1-5 | 6 | 7 | 8 | 9 | 10 | 11 and later |
|---|---|---|---|---|---|---|---|
| Surrender Factor | .30 | .25 | .20 | .15 | .10 | .05 | 0 |

An additional surrender charge will be assessed for any increase in the Specified Amount. The additional charge is calculated by multiplying the surrender factor (shown below) by the lesser of (1) or (2), where:

(1) is (a) times (b) divided by (c),where:

    (a) is the increase in the Specified Amount;

    (b) is the sum of the accumulation value just prior to the increase in the Specified Amount and the total premiums received in the twelve months just following the increase in the Specified Amount;

    (c) is the Specified Amount after the increase in the Specified Amount;

(2) is the Maximum Surrender Premium for the attained age of the insured on the effective date of the increase in the Specified Amount, as shown

on page 3A, multiplied by the increase in the Specified Amount.

The surrender factor is based on how long the increase has been in effect according to the following table:

| Increase Year | 1-5 | 6 | 7 | 8 | 9 | 10 | 11 and later |
|---|---|---|---|---|---|---|---|
| Surrender Factor | .15 | .125 | .10 | .075 | .05 | .025 | 0 |

The surrender charge in effect at any time is the sum of the surrender charge for the initial Specified Amount plus the additional surrender charge for any increase in the Specified Amount. If the Specified Amount is decreased, the surrender charge will not decrease.

**Separate Account Accumulation Values -** The accumulation value in each division on the policy date is equal to the portion of the net premium which has been paid and allocated to that division, less the portion of the first monthly deduction allocated to the policy's accumulation value in that division.

At the end of each valuation period after the policy date, the policy's accumulation value in a division is equal to (1) plus (2) plus (3) minus (4) minus (5) where:

(1) is the accumulation value in the division on the preceding valuation date multiplied by the Net Investment Factor for the current valuation period.

(2) is any net premium received during the current valuation period which is allocated to the division.

(3) is all accumulation values transferred to the division from another division or the General Account during the current valuation period.

(4) is all accumulation values transferred from the division to another division or the General Account and accumulation values transferred to secure a policy debt during the current valuation period.

(5) is all withdrawals from the division during the current valuation period.

In addition, whenever a valuation period includes the Monthly Anniversary Day, the accumulation value at the end of such period is reduced by the portion of the monthly deduction allocated to the division.

**Net Investment Factor** - The Net Investment Factor measures the investment performance of a division during a valuation period. The Net Investment Factor for each division for a valuation period is calculated as (a) divided by (b), minus (c) where:

(a) is (1) the value of the assets in the division at the end of the preceding valuation period, plus (2) the investment income and capital gains, realized or unrealized, credited to the assets in the valuation period for which the net investment factor is being determined, minus (3) the capital losses, realized or unrealized, charged against those assets during the valuation period, minus (4) any amount charged against each division for taxes, or any amount the Company sets aside during the valuation period as a reserve for taxes attributable to the operation or maintenance of each division.

(b) is the value of the assets in the division at the end of the preceding valuation period.

(c) is a charge not to exceed .0024657% for each day in the valuation period. This corresponds to .9% per year for mortality and expense risks.

**General Account Accumulation Value** - The accumulation value in the General Account on the policy date is equal to the portion of the net premium which has been paid and allocated to the General Account, less the portion of the first monthly deduction allocated to the General Account.

On each Monthly Anniversary Day, the accumulation value in the General Account is equal to (1) plus (2) plus (3) plus (4) minus (5) minus (6) minus (7) where:

(1) is the accumulation value in the General Account on the preceding Monthly Anniversary Day.

(2) is one month's interest on item (1).

(3) is any net premium received since the preceding Monthly Anniversary Day plus interest from the date the net premium is received to the Monthly Anniversary Day.

(4) is the sum of all accumulation values transferred to the General Account division of Separate Account A since the preceding Monthly Anniversary Day and interest from the date the accumulation value is transferred to the Monthly Anniversary Day.

(5) is the sum of all accumulation values transferred from the General Account to a division of Separate Account A since the preceding Monthly Anniversary Day and interest from the date the accumulation value is transferred to the Monthly Anniversary Day.

(6) is all withdrawals from the General Account since the preceding Monthly Anniversary Day plus interest from the date of the withdrawal to the Monthly Anniversary Day.

(7) is the portion of the monthly deduction allocated to the accumulation value in the General Account, to cover the policy month following the Monthly Anniversary Day.

On any date other than a Monthly Anniversary Day, the accumulation value will be calculated on a consistent basis.

**General Account Interest Rate** - The policy's accumulation value in the General Account will earn interest daily at a minimum guaranteed effective rate of 4 1/2%. Interest in excess of the guaranteed rate may be applied in the calculation of the accumulation value at such increased rates as the Company may determine. The policy's accumulation value held in the General Account for policy loan collateral will earn interest daily at the lesser of an effective rate of 8% or the interest rate currently credited.

**Monthly Deduction** - The monthly deduction for a policy month shall be equal to (1) plus (2), where:

(1) is the cost of insurance (as described below) and the cost of additional benefits provided by rider for the policy month.

(2) is a monthly administrative charge. This charge is equal to $6.00 per month in each policy year.

The monthly deduction for a policy month will be allocated among the General Account and the divisions of Separate Account A in the same proportion that the accumulation value in the General Account less any debt and the accumulation value in each division bears to the total accumulation value of the policy, less any debt, at the beginning of the policy month.

**Cost of Insurance** - The cost of insurance for the insured is determined on a monthly basis. The cost of insurance is determined separately for the initial Specified Amount and each subsequent increase in Specified Amount. The cost of insurance is calculated as (1), multiplied by the result of (2) minus (3), where:

(1) is the cost of insurance rate as described in the Cost of Insurance Rates provision.

(2) is the death benefit at the beginning of the policy month, divided by 1.0036748.

(3) is the accumulation value at the beginning of the policy month, prior to the monthly deduction for the cost of insurance.

If the Death Benefit Option is Option I and there have been increases in the Specified Amount then the accumulation value shall be first considered a part of the initial Specified Amount. If the accumulation value exceeds the initial Specified Amount, it shall then be considered a part of the additional Specified Amounts resulting from increases in the order of such increases.

**Cost of Insurance Rates** - The monthly cost of insurance rate is based on the sex, issue age, policy year, and rating class of the insured. Monthly cost of insurance rates will be determined by the Company based upon expectations as to future mortality experience. Any change in cost of insurance rates will apply to all individuals of the same class as the insured. The rating class will be determined separately for the initial Specified Amount and for any increase in Specified Amount that requires evidence of insurability. However, the cost of insurance rates can never be greater than those shown in the Table of Monthly Guaranteed Cost of Insurance Rates. Such guaranteed maximum rates are based on the Commissioners 1980 Standard Ordinary Mortality Table.

**Insufficient Cash Value** - If the cash value less any debt on a Monthly Anniversary Day is insufficient to cover the monthly deduction for the month following such Monthly Anniversary Day, the policy shall terminate as provided in the Grace Period provision.

**Continuation of Insurance** - In the event Planned Periodic Premium payments are not continued, insurance coverage under this policy and any benefits provided by rider will be continued until the cash value, less any debt, is insufficient to cover the monthly deduction, as provided in the Grace Period provision. This provision shall not continue the policy beyond the Maturity Date nor continue any rider beyond the date for its termination, as provided in the rider. If the cash value is sufficient to continue this policy to the Maturity Date, then any remaining cash value will be paid to the Owner if the insured is then living.

**Surrender** - Upon written request the Owner may surrender this policy at any time during the lifetime of the insured and before the Maturity Date. The amount payable on surrender of this policy shall be the cash value on the date the Company receives the request for surrender, less any debt.

**Withdrawal of Cash Value (Withdrawal) -** Upon written request the Owner may make a withdrawal from this policy. Any withdrawal is subject to the following conditions:

(1)  The amount withdrawn may not exceed the cash value less any outstanding debt.

(2)  The minimum amount that may be withdrawn is $750.

(3)  A charge equal to the lesser of $25 or 2% of the amount of the withdrawal will be deducted from the amount of each withdrawal.

(4)  The accumulation value will be reduced by the sum of the withdrawal and a pro-rata portion of the surrender charge in effect on the date of the withdrawal. The remaining accumulation value and schedule of surrender charges will be determined by multiplying each of these values by a numerical factor. This numerical factor is equal to

$$1 - \frac{\text{Amount of Withdrawal}}{\text{Cash Value Immediately Before Withdrawal}}$$

(5)  The Death Benefit will be reduced by an amount equal to the reduction in the accumulation value. This will result in a reduction of the Specified Amount if the Death Benefit is Option I by an amount equal to the reduction in the accumulation value. The Specified Amount remaining in force after any withdrawal must be at least $10,000.

The Owner may allocate the withdrawal among the General Account and the divisions of Separate Account A. If the Owner does not specify the allocation, then the withdrawal will be allocated among the General Account and the divisions of Separate Account A in the same proportion that the accumulation value in the General Account, less any debt, and the accumulation value in each division bears to the total accumulation value of the policy, less any debt, on the date of the withdrawal.

**Basis of Computations -** Minimum cash values and reserves in the General Account are based on the Commissioners 1980 Standard Ordinary Mortality Table with interest at 4 1/2% per year.

The method used in computing cash values and reserves in Separate Account A is in accordance with actuarial procedures that recognize the variable nature of Separate Account A. The method used is such that if the Net Investment Factor, less one, for all divisions of Separate Account A, at all times from the policy date, is equal to an effective annual interest rate of 4 1/2%, then the cash values and reserves in Separate Account A will be at least equal to the minimum cash values and reserves, which would have been required by the law of the state in which this policy is delivered, of an equivalent policy in which all net premiums have been allocated to the General Account.

All values under this policy are not less than the values required by the state in which this policy was delivered. A detailed statement of the method of computation of cash values under this policy has been filed with the insurance department of the state in which this policy was delivered.

**Illustration of Benefits and Values -** The Company will provide illustrations of death benefits and cash values at any time after the policy date upon written request by the Owner and payment of a nominal fee. The fee payable will be the one then in effect for this service; however, such fee can never exceed $25. This illustration will be based on the existing cash value at the time of request and maximum cost of insurance rates. Additional illustrations will be made based on the existing cash value and current mortality assumptions.

## SETTLEMENT OPTIONS

**Election of an Option** - Any proceeds to be paid under this policy may be paid as an income under any one of the options stated below. The election of an option or change of prior election must be made in writing to the Company at its Home Office. If an option is not chosen by the Owner prior to the death of the insured, the primary beneficiary may make such election.

Unless the Company agrees otherwise, any such payments will be made only to a natural person taking in his own right. An option may be elected only if the amount of the proceeds is $2,000 or more. The Company may change the interval of payments to 3, 6 or 12 months, if necessary to increase the guaranteed payments to at least $20.00 each.

**Option A - Installments of a Specified Amount -** Payments of an agreed amount to be made each month until the proceeds and interest are exhausted.

**Option B - Installments for a Specified Period -** Payments to be made each month for an agreed number of years.

**Option C - Life Income -** Payments to be made each month for the lifetime of the payee. It is guaranteed that payments will be made for a minimum of 10, 15, or 20 years as agreed upon.

**Option D - Interest -** Payment of interest on the proceeds held by the Company. The amount of interest payment is calculated at the compound rate of 3% per year. Interest payments will be made in 12-, 6-, 3-, or 1-month intervals as agreed upon.

**Supplementary Contract -** When the proceeds of this policy become payable, a supplementary contract setting forth the terms of the option chosen will be issued to the payee. The first payment under Option A, B, or C shall be payable on the effective date of such option. The first payment under Option D shall be payable at the end of the first agreed payment interval.

**Interest -** The interest rate for Options A, B, and D will not be less than 3% per year. The interest rate for

Option C will not be less than 2 1/2% per year. Interest in addition to that stated may be paid or credited from time to time under any option but only at the sole discretion of the Company.

**Withdrawal Value -** Unless otherwise stated in the election of an option, the payee shall have the right to receive the withdrawal value under that option.

For Options A and D the withdrawal value shall be any unpaid balance of proceeds plus accrued interest.

For Option B the withdrawal value shall be the commuted value of the remaining payments. Such value will be calculated on the same basis as the original payments.

For Option C the withdrawal value shall be the commuted value of the remaining payments. Such value will be calculated on the same basis as the original payments. To receive this value, the payee must submit evidence of insurability. Such evidence must be satisfactory to the Company. Otherwise, the withdrawal value shall be the commuted value of any remaining guaranteed payments. In this event the payments will be resumed at the end of the guaranteed period if the payee should be alive on that date. The payments will then continue for the lifetime of the payee.

Under any of these options, the payee shall have the right to receive the withdrawal value in partial amounts. However, the partial amounts shall not be less than the smaller of the withdrawal value or $100.

**Death of Payee -** If the payee dies before the proceeds are exhausted or the prescribed payments made, a final payment will be made in one sum to the estate of the last surviving payee. The amount to be paid will be calculated as described for the applicable option in the Withdrawal Value Provision.

**Limitation on Rights of Payee and Claims of Creditors** - Neither the amount retained under an option nor any payment made under an option can be assigned or pledged. To the extent permitted by law such amounts or payments shall not be subject to claims of creditors or legal process.

**CHUBB**
**LifeAmerica**

**AMENDMENT TO**
**APPLICATION FOR INSURANCE**

Chubb Life Insurance Company of America, One Granite Place, P.O. Box 515, Concord, NH 03302

506017735 - Peter S. Bezich

The undersigned hereby amends his or her application for insurance numbered _____ 010308 _____

Statement in answer to Part _____ 1 _____ No. _____ is amended to read:

The application for insurance was signed on November 14, 1996 in Wilmington Delaware.

_____          _____
Signature of Witness                    Signature of Proposed Insured

_____          _____
Signature of Witness                    Signature of Proposed Owner (if different than the proposed insured.)

Dated at _____ this _____ day of _____ 19 _____

The Proposed Insured and Proposed Owner (if different than the Proposed Insured) must sign *both* copies of this amendment before delivery of this policy. Return first copy, properly signed, to the Home Office.

Form 9-9015                                                                    1/93



**TERMINAL ILLNESS ACCELERATED BENEFIT RIDER**

Chubb Life Insurance Company of America
Home Office: One Granite Place, P.O. Box 515, Concord, New Hampshire 03302

**NOTICE. Death benefits and policy cash values, if any, will be reduced if an accelerated benefit is paid. Benefits paid under this Rider may or may not be taxable. Consult your personal tax advisor to assess the tax consequences of the benefit.**

This Rider is part of the Policy to which it is attached. It takes effect on the date of issue or Policy Date of the Policy. In this Rider, "we", "us", or "our" means Chubb Life Insurance Company of America; "you" and "your" means the Owner of the Policy; and "insured" means the person named on the data page of the Policy.

**CONSIDERATION** - This Rider is issued in consideration of the application. There is no charge for this Rider prior to the time you request Rider benefits.

**CANCELLATION** - We will not cancel this Rider, unless you request termination of this Rider. It will remain in force as long as this Policy remains in force or until benefits are paid under this Rider.

**DEFINITIONS**

**Accelerated Benefit Payment** - The Accelerated Benefit Payment is the requested portion of the Eligible Death Benefit less the adjustments and deductions as explained in the Benefits section.

**Administrative Expense Charge** - The Administrative Expense Charge will be deducted from the requested portion of the Eligible Death Benefit upon payment of the Accelerated Benefit.

**Benefit Ratio** - The Benefit Ratio is the result of dividing (a) by (b) where:

(a) is the requested portion of the Eligible Death Benefit; and

(b) is the Death Benefit or current Face Amount of Insurance under the policy to which this Rider is attached.

**Eligible Death Benefit** – The Eligible Death Benefit for the Insured is the Death Benefit or current Face Amount of Insurance on the life of the Insured provided by this Policy.

**Immediate Family** - Immediate Family means the spouse, child, brother, sister, parent, or grandparent of the Insured or the Owner.

**Physician** - Physician means an individual who is licensed to practice medicine and treat illness or injury in the state in which treatment is received and who is acting within the scope of that license. Physician does not include:

(1) the insured;

(2) you;

(3) a person who lives with the insured or you; or

(4) a person who is part of the Insured's or your Immediate Family.

**Physician Statement** - A Physician Statement means a written statement acceptable to us, signed by a Physician which:

(1) gives the Physician's diagnosis of the Insured's noncorrectable medical condition; and

(2) states that, with reasonable medical certainty, the noncorrectable medical condition will result in the death of the Insured within 6 months or less from the date of the Physician Statement, assuming the exercise of ordinary and reasonable medical care, advice, and treatment available in the same or similar communities.

**Terminal Illness** - Terminal Illness is a noncorrectable medical condition, which will result in the death of the Insured within 6 months or less from the date of the Physician Statement.

**BENEFITS**

If the Insured develops a Terminal Illness, you may request an acceleration of a portion of the Eligible Death Benefit. The Eligible Death Benefit will be determined as of the date the Notice of Claim is received at our Home Office. The maximum amount of Eligible Death Benefit which you may request from this Policy is fifty per cent (50%) of the Death Benefit or current Face Amount exclusive of any and all riders. The maximum amount available on all policies with this Rider attached in force with us is $250,000 per Insured.

**Adjustments and Deductions** - The requested portion of the Eligible Death Benefit will be subject to the following adjustments and deduction:

(1)   An actuarial discount will be deducted from the requested portion of the Eligible Death Benefit. This discount reflects the early payment of amounts held under the Policy. It will be based on an annual interest rate which has been declared by us and the then current premium or cost of insurance rate, both of which are in effect as of the date your Notice of Claim is received at our Home Office. The maximum interest rate used shall be the greater of the yield on 90 day treasury bills or the maximum statutory adjustable policy loan interest rate in effect upon the date of request.

(2)   If, on the date we approve your request, there is a Policy loan outstanding on this Policy, a reduction to the requested portion of the Eligible Death Benefit will apply. This reduction serves to repay a portion of the Policy loan and is determined as follows: (Outstanding Policy Loan) x (Benefit Ratio).

(3)   A deduction will be made for any premiums due within the Policy's grace period and are unpaid at the time we approve your request.

(4)   A deduction will be made for the Administrative Expense Charge.

**Waiver of Premiums or Cost of Insurance** - If all of the following occur:

(1)   a Waiver of Premium Rider or a Waiver of Monthly Deduction Rider on the Insured is attached to this Policy;

(2)   that Rider is in force at the time of the claim for this Rider's benefits; and

(3)   Proof of Terminal Illness is submitted and approved;

then for purposes of any Waiver of Premium Rider or Waiver of Monthly Deduction Rider that is in force, the Insured will be deemed to be Totally Disabled and have satisfied the initial waiting period required by the applicable Rider.

**Conditions for the Accelerated Benefit Payment** - The Accelerated Benefit Payment is subject to the following conditions:

(1)   This Policy must be in force other than as Extended Term Insurance or Reduced Paid-up Insurance.

(2)   During the lifetime of the Insured, we must receive Proof of Terminal Illness that is acceptable to us.

(3)   No prior request for an Accelerated Benefit Payment may have been made under this or any other Terminal Illness Accelerated Benefit Rider issued by us with respect to the Insured. If more than one request is received at the same time, we will determine which request is deemed to have

been received first and the other requests will be returned.

(4)   We must receive a consent form from all irrevocable beneficiaries, if any, and all assignees, if any. We also reserve the right to require a consent form from a spouse, the Insured, other beneficiaries, or any other person if, in our discretion, such person's consent is necessary to protect our interests.

(5)   This Rider provides for the advance of a portion of the Eligible Death Benefit of this Policy. This is not meant to cause involuntary access to proceeds ultimately payable to the beneficiary. Therefore, this benefit is not available:

(a)   If either you or the Insured is required by law to use this benefit to meet the claims of creditors, whether in bankruptcy or otherwise; or

(b)   If either you or the Insured is required by a government agency to use this benefit in order to apply for, obtain or otherwise keep a government benefit or entitlement.

**Limitations** - No benefit will be provided by this Rider if Terminal Illness results from intentionally self-inflicted injuries.

## ADJUSTMENTS TO THE POLICY

After an Accelerated Benefit Payment is made, the Policy and all riders will remain in force subject to the following adjustments:

(1)   The Policy's Death Benefit or current Face Amount, its current and Guaranteed Cash Value, if any, its Fund Account or Accumulation Value, if any, and its required Premium, if any, will be reduced by the Benefit Ratio.

(2)   Any outstanding Policy loan will be reduced by the portion of the Policy loan repaid as specified in the Benefits provision of this Rider.

(3)   We will mail to you, for attachment to the Policy, a new policy data page showing the decrease in policy values resulting from the Accelerated Benefit Payment.

## CLAIMS

**Notice of Claim** - Written Notice of Claim may be given to us any time after the date the Insured develops a Terminal Illness as defined in this Rider. Notice of Claim must identify the Insured and be sent to us at our Home Office.

**Claim Forms** - We will send claim forms to the Owner when Notice of Claim is received. If we do not mail the claim form within 15 days, the Owner will be considered to have complied with the Proof of Terminal Illness requirements by giving us a Physician Statement acceptable to us and a written statement of the nature and extent of the Terminal Illness.

**Proof of Terminal Illness** - Written proof of the insured's Terminal Illness must be received by us before we will make a Benefit payment. This proof will include a properly completed claim form and a Physician Statement acceptable to us. We may request additional medical information from the Physician submitting the statement or any Physician or institution deemed necessary. We will not unreasonably withhold our acceptance of Proof of Terminal Illness.

**Physical Examination** - At our expense, we reserve the right to have a Physician of our choosing examine the insured prior to making an Accelerated Benefit payment. In the event that the Physician we choose provides a different diagnosis of the insured's medical conditions, we reserve the right to rely on the statement from the Physician of our choosing for claim purposes.

**Time of Payment of Claims** - All benefits described in this Rider will be available as soon as we receive satisfactory Proof of Terminal Illness.

**Payment of Claims** - All Rider benefits will be paid in a lump sum to the Owner as of the date of benefit payment. Upon the death of the Owner, we will pay the benefits to the estate of the Owner, or contingent Owner, if applicable.

## GENERAL PROVISIONS

**Representations and Contestability** - All statements made in the application for this Rider, or the policy to

which it is attached, by or on behalf of the insured will, in the absence of fraud, be deemed representations and not warranties. The validity of the Rider with respect to the insured will not be contestable after it has been in force for 2 years from the date of issue or Policy Date or reinstatement of the policy to which this Rider is attached during which time the insured was living.

**Reinstatement** - If this Policy is reinstated, this Rider will also be reinstated provided a benefit has not been paid under this rider.

**Incorrect Age or Sex** - If there is an error in the age or sex of the insured, the benefits available under this Rider will be the amount that would be available based on the Death Benefit or Face Amount that this Policy would have provided at the correct age or sex.

**Termination of Rider** - This Rider terminates:

(1) on the day we receive written request of the Owner; or

(2) upon termination of this Policy; or

(3) when this Policy reaches its Maturity Date, if any; or

(4) upon payment of the Accelerated Benefit provided by this Rider; or

(5) upon the death of the insured.

*Theresa M. Stone*

President

*Frederick D. Condon*

Secretary



**Chubb Life Insurance Company of America**
Home Office: One Granite Place, P.O. Box 515, Concord, New Hampshire 03302
Service Office: P.O. Box 1369, Chattanooga, Tennessee 37401

## EXTENSION OF MATURITY DATE RIDER

**Effective Date -**

This rider is part of the policy to which it is attached. It takes effect on the effective date of the policy unless a later effective date is shown above. In this rider, "we", "us" or "our" means the Chubb Life Insurance Company of America; "you" means the Owner of the policy; and "insured" means the person named on the Data Page.

The Maturity Date may be extended beyond that date otherwise defined in the policy by written request. The new Maturity Date will be that requested by you. If you elect to extend the original Maturity Date, you may revoke this election in writing at any time prior to the original Maturity Date.

After the original Maturity Date:

(1) No new premiums will be accepted by us;

(2) We will continue to credit interest to the policy's Accumulation Value of the General Account in the same manner;

(3) The Accumulation Value in each division of Separate Account A will continue to be calculated in the same manner;

(4) The Death Benefit will always be equal to the Accumulation Value of the policy;

(5) Interest on any policy loans will continue to accrue and become part of any debt;

(6) We will deduct no more cost of insurance charges.

*Theresa M. Stone*

President

*Frederick S. Condon*

Secretary

P93-55

5R6017735



**Chubb Life Insurance Company of America**
Home Office: One Granite Place, P.O. Box 515, Concord, New Hampshire 03302
Service Office: P.O. Box 1369, Chattanooga, Tennessee 37401

### GENERAL REVISIONS RIDER

Chubb Life Insurance Company of America issues this Rider as a part of the policy to which it is attached. This Rider is issued in consideration of the application and the payment of the initial premium for the policy. There is no premium charge for this Rider. The following sections of the policy are changed:

(1) The last sentence in sub-paragraph 5 under Changes in Existing Coverage on Page 7 is changed to "No such decrease may reduce the Specified Amount below $25,000.00."

(2) The following sub-paragraph under Changes in Existing Coverage on Page 7 is added:

(6) The Specified Amount cannot be increased at any time after the Insured reaches the age of 85.

(3) The entire section Policy Loans on Page 11 is replaced by the following section:

**Policy Loans** - After the first policy anniversary, a loan will be granted upon the sole security and assignment of this policy to the Company. The maximum loan amount is 90% of the cash value on the date of the loan less any debt. Cash value is defined under Nonforfeiture Values on Page 14. Any debt will be deducted from the proceeds payable at the Insured's death, on maturity, or on surrender.

The Owner may allocate the policy loan among the General Account and the divisions of Separate Account A. If the Owner does not specify the allocation, then the policy loan will be allocated among the General Account and the divisions of Separate Account A in the same proportion that the accumulation value in the General Account, less any debt, and the accumulation value in each division bears to the total accumulation value of the policy, less any debt, on the date of the policy loan. Accumulation value in each division equal to the policy loan allocated to each division will be transferred to the General Account and reduce the accumulation value in that division. If loan interest is not paid when due, an amount of accumulation value equal to the loan interest will also be transferred.

If the policy debt exceeds the policy's accumulation value in the General Account, the Company will transfer accumulation value equal to the excess debt from the divisions of Separate Account A to the General Account as security for the excess debt. The amount transferred will be allocated among the divisions in the same proportion that the accumulation value in each division bears to the policy's total accumulation value in all divisions of Separate Account A.

506017735

**Types of Policy Loans - Type A and Type B -** There are two (2) types of policy loans which the Company will grant to the Owner - Type A and Type B. The type of loan which the Company will grant depends upon the amount of unloaned Type A balance available at the time the loan is taken. The unloaned Type A balance is 90% of the cash value, less the threshold, and less the sum of any outstanding Type A loans as defined below. The threshold is the Guideline Single Premium for this policy at issue as defined in Section 7702 of the Internal Revenue Code of 1986 entitled "Life Insurance Contract Defined". If the Specified Amount as defined on Page 10 of this policy increases, the threshold will be increased to the threshold at issue times the ratio of the largest Specified Amount ever existing on the policy to the initial Specified Amount. If the Specified Amount decreases, the threshold will not change.

A Type A Loan is a policy loan granted by the Company when the unloaned Type A balance before the loan is taken exceeds the loan requested.

A Type B Loan is a policy loan granted by the Company when the unloaned Type A balance before the loan is taken is less than or equal to zero.

When the unloaned Type A balance before the loan is taken exceeds zero, but is less than the loan requested, a Type A Loan equal to the unloaned Type A balance will be granted by the Company. The remainder of the requested loan will be a Type B Loan.

The Company will grant a Type A Loan first before a Type B Loan. Once a policy loan is granted, it remains a Type A or a Type B until it is repaid.

**Policy Loan Interest -** The interest charged by the Company on a policy loan depends upon the type of loan granted. On a Type A Loan the Company will charge an effective interest rate of two (2) percentage points lower than the effective interest rate charged at the time by the Company for a Type B Loan.

On a Type B Loan the Company will charge interest at the effective maximum rate of 8%, or at any lower rate established by the Company for any period during which the loan is outstanding.

Loan interest accrues on a daily basis from the date of the loan and is payable at the end of each policy year. Loan interest unpaid on a policy anniversary becomes loan principal. The Company shall provide at least 30 days written notice to the Owner (or any other party designated by the Owner to receive notice under this policy) and any assignee recorded at the Home Office of any increase in the interest rate on loans outstanding 40 or more days prior to the effective date of the increase. As to loans made during the 40 days before the effective date of the policy loan interest rate increase, the Company shall notify the Owner and any assignee at the time the loan is made.

The effective date of any increase in such interest rate shall not be less than twelve months after the effective date of the establishment of the previous rate. If the interest rate is increased, the amount of such increase shall not exceed one percent per year.

Interest accrues on a daily basis from the date of the loan and is compounded annually. Interest unpaid on a policy anniversary becomes loan principal.

**Debt** - As used in this policy, debt means the principal of any loan outstanding against this policy, plus any accrued loan interest. If the policy debt exceeds the cash value, the Company will send a notice by mail to the Owner and to the assignee, if any, at their addresses last reported to the Company. If the excess is not paid within 61 days from the date the notice is mailed, the policy will terminate without value.

**Policy Loan Repayment** - Any debt may be repaid, in whole or in part, at any time while this policy is in force. When a loan repayment is made, accumulation value securing the debt in the General Account equal to the loan repayment will be allocated among the General Account and divisions of Separate Account A using the same percentages used to allocate net premiums. Repayments will be used to reduce policy loans until fully paid in the following order:

(1)   Any or all Type B Loans; then

(2)   Any or all Type A Loans.

President

Secretary

## SETTLEMENT OPTIONS
## TABLES OF MONTHLY INSTALLMENTS UNDER OPTION B OR C

Monthly installments are shown for each $1,000 of net proceeds applied. The ages shown are ages nearest birthday when the first monthly installment is payable.

### OPTION B TABLE
### INSTALLMENTS FOR A SPECIFIED PERIOD

| Years | Monthly Installment | Years | Monthly Installment | Years | Monthly Installment | Years | Monthly Installment | Years | Monthly Installment |
|---|---|---|---|---|---|---|---|---|---|
| 1 | $84.47 | 7 | $13.16 | 13 | $7.71 | 19 | $5.73 | 25 | $4.71 |
| 2 | 42.86 | 8 | 11.68 | 14 | 7.26 | 20 | 5.51 | 26 | 4.59 |
| 3 | 28.99 | 9 | 10.53 | 15 | 6.87 | 21 | 5.32 | 27 | 4.48 |
| 4 | 22.06 | 10 | 9.61 | 16 | 6.53 | 22 | 5.15 | 28 | 4.37 |
| 5 | 17.91 | 11 | 8.86 | 17 | 6.23 | 23 | 4.99 | 29 | 4.27 |
| 6 | 15.14 | 12 | 8.24 | 18 | 5.96 | 24 | 4.84 | 30 | 4.18 |

Multiply the monthly installment by 11.84 for annual, by 5.96 for semi-annual or by 2.99 for quarterly installments.

### OPTION C TABLE
### LIFE INCOME

| Attained Age of Payee | | MONTHLY INSTALLMENTS | GUARANTEED | | Attained Age of Payee | | MONTHLY INSTALLMENTS | GUARANTEED | |
|---|---|---|---|---|---|---|---|---|---|
| Male | Female | 10 Years | 15 Years | 20 Years | Male | Female | 10 Years | 15 Years | 20 Years |
| 16 or Under | 21 or Under | $2.83 | $2.82 | $2.81 | 51 | 56 | $4.60 | $4.44 | $4.24 |
| 17 | 22 | 2.85 | 2.84 | 2.84 | 52 | 57 | 4.69 | 4.52 | 4.30 |
| 18 | 23 | 2.88 | 2.87 | 2.86 | 53 | 58 | 4.79 | 4.60 | 4.36 |
| 19 | 24 | 2.90 | 2.89 | 2.88 | 54 | 59 | 4.90 | 4.69 | 4.41 |
| 20 | 25 | 2.93 | 2.92 | 2.91 | 55 | 60 | 5.01 | 4.77 | 4.47 |
| 21 | 26 | 2.95 | 2.95 | 2.93 | 56 | 61 | 5.12 | 4.86 | 4.53 |
| 22 | 27 | 2.98 | 2.97 | 2.96 | 57 | 62 | 5.23 | 4.94 | 4.59 |
| 23 | 28 | 3.01 | 3.00 | 2.99 | 58 | 63 | 5.35 | 5.03 | 4.64 |
| 24 | 29 | 3.04 | 3.03 | 3.02 | 59 | 64 | 5.48 | 5.12 | 4.70 |
| 25 | 30 | 3.08 | 3.07 | 3.05 | 60 | 65 | 5.61 | 5.21 | 4.75 |
| 26 | 31 | 3.11 | 3.10 | 3.08 | 61 | 66 | 5.74 | 5.30 | 4.80 |
| 27 | 32 | 3.14 | 3.13 | 3.11 | 62 | 67 | 5.87 | 5.39 | 4.85 |
| 28 | 33 | 3.18 | 3.17 | 3.15 | 63 | 68 | 6.01 | 5.48 | 4.90 |
| 29 | 34 | 3.22 | 3.20 | 3.18 | 64 | 69 | 6.16 | 5.56 | 4.94 |
| 30 | 35 | 3.26 | 3.24 | 3.22 | 65 | 70 | 6.30 | 5.65 | 4.98 |
| 31 | 36 | 3.30 | 3.28 | 3.25 | 66 | 71 | 6.45 | 5.73 | 5.02 |
| 32 | 37 | 3.34 | 3.32 | 3.28 | 67 | 72 | 6.60 | 5.82 | 5.05 |
| 33 | 38 | 3.39 | 3.36 | 3.33 | 68 | 73 | 6.76 | 5.90 | 5.09 |
| 34 | 39 | 3.43 | 3.41 | 3.37 | 69 | 74 | 6.91 | 5.97 | 5.12 |
| 35 | 40 | 3.48 | 3.45 | 3.41 | 70 | 75 | 7.07 | 6.05 | 5.14 |
| 36 | 41 | 3.53 | 3.50 | 3.45 | 71 | 76 | 7.23 | 6.12 | 5.17 |
| 37 | 42 | 3.59 | 3.55 | 3.50 | 72 | 77 | 7.38 | 6.18 | 5.19 |
| 38 | 43 | 3.64 | 3.60 | 3.54 | 73 | 78 | 7.54 | 6.24 | 5.20 |
| 39 | 44 | 3.70 | 3.65 | 3.59 | 74 | 79 | 7.69 | 6.30 | 5.22 |
| 40 | 45 | 3.76 | 3.71 | 3.64 | 75 | 80 | 7.84 | 6.35 | 5.23 |
| 41 | 46 | 3.82 | 3.77 | 3.69 | 76 | 81 | 7.98 | 6.39 | 5.24 |
| 42 | 47 | 3.88 | 3.82 | 3.74 | 77 | 82 | 8.13 | 6.43 | 5.25 |
| 43 | 48 | 3.95 | 3.88 | 3.79 | 78 | 83 | 8.26 | 6.47 | 5.26 |
| 44 | 49 | 4.02 | 3.95 | 3.84 | 79 | 84 | 8.39 | 6.50 | 5.26 |
| 45 | 50 | 4.09 | 4.01 | 3.90 | 80 or Over | 85 or Over | 8.51 | 6.53 | 5.27 |
| 46 | 51 | 4.17 | 4.08 | 3.95 | | | | | |
| 47 | 52 | 4.25 | 4.15 | 4.01 | | | | | |
| 48 | 53 | 4.33 | 4.22 | 4.07 | | | | | |
| 49 | 54 | 4.42 | 4.29 | 4.12 | | | | | |
| 50 | 55 | 4.50 | 4.37 | 4.18 | | | | | |

Multiply the monthly installment by 11.80 for annual, by 5.93 for semi-annual or by 2.98 for quarterly installments.

CHUBB LIFE INSURANCE COMPANY OF AMERICA
CHUBB COLONIAL LIFE INSURANCE COMPANY
CHUBB SECURITIES CORPORATION

CORPORATE OFFICES: ONE GRANITE PLACE, CONCORD, NH 03301

FORM 0-8105 ED. 5/96

### Name Change Endorsement

This endorsement attaches to and forms a part of your Chubb Life Insurance Company of America policy, contract or certificate.

The policy, contract or certificate to which this endorsement is attached is amended by changing all references to "Chubb", "Chubb Life" or "Chubb Life Insurance Company of America" to "Jefferson Pilot Financial Insurance Company".

The Home Office of Jefferson Pilot Financial Insurance Company is:

One Granite Place
Concord, NH 03302

For correspondence, the mailing address is:

P.O. Box 515
Concord, NH 03302

All other terms of your policy, contract or certificate remain the same.

The effective date of this endorsement is May 1, 1998.

Signed for Jefferson Pilot Financial Insurance Company

President

Secretary



**Lincoln**
Financial Group®

The Lincoln National Life Insurance Company
One Granite Place
P.O. Box 515
Concord, NH 03302-0515

Peter S. Bezich
508 Wolcott Hill Rd
Wethersfield CT 06109-2938

Policy No. 506017735

Peter S. Bezich:

Effective July 2, 2007, Jefferson Pilot Financial Insurance Company merged into The Lincoln National
Life Insurance Company. For additional information regarding this announcement, please visit our web site
at www.lfg.com.

Enclosed is an endorsement showing your new insurer's name as part of the Lincoln Financial Group
family of companies. Please take a few minutes to review this document and then place it with your policy
certificate or contract. No additional action is required by you at this time; your policy, certificate or
contract has been transferred automatically to The Lincoln National Life Insurance Company. All future
premium notices sent by us will reference The Lincoln National Life Insurance Company.

Unless specifically addressed on the enclosed endorsement, all other terms and conditions of your
policy remain the same.

The Corporation's family of companies is consistently rated in the top tier of insurance and annuity
companies nationwide. Your policy and the security it provides are backed by a company with financial
integrity, investment quality, and stability.

We welcome you to our growing family of policyholders. It is our continuing goal to provide you with the
best possible products and services.

If you have a question about your policy you may contact us or your Lincoln Financial Group
representative.

Service Office:
The Lincoln National Life Insurance Company
P.O. Box 515
Concord, NH 03302
1-800-844-5893
www.lfg.com

LFG REPRESENTATIVE:
ROBERT D GRIBSEMER
5818 KENNETT PIKE
WILMINGTON, DE 19807-1116
(302) 654-5451

Sincerely,

Customer Service
The Lincoln National Life Insurance Company

LLA0612-0299

JPFIC-CND-LIFE

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
The Lincoln National Life Insurance Company's home office is located in Fort Wayne, IN.

LNL-CND#1

**The Lincoln National Life Insurance Company**
Service Office:  One Granite Place
                 P.O. Box 515
                 Concord, New Hampshire  03302

### Merger and Name Change Endorsement

This endorsement attaches to and forms a part of your Jefferson Pilot Financial Insurance Company policy, contract or certificate.

Effective July 2, 2007 Jefferson Pilot Financial Insurance Company merged with The Lincoln National Life Insurance Company.  As a result of the merger, The Lincoln National Life Insurance Company is responsible for all of Jefferson Pilot Financial Insurance Company's legal obligations, including your policy, contract or certificate.  Therefore, all references in the policy, contract or certificate to Jefferson Pilot Financial Insurance Company (Jefferson Pilot) are hereby changed to reflect the surviving company name of The Lincoln National Life Insurance Company.

The State of Domicile for The Lincoln National Life Insurance Company (the surviving company) is Indiana.  As a result, any reference in the policy, contract or certificate to the State of Domicile or Home State is hereby changed to reference Indiana as the location of the State of Domicile or Home State.

All references to a Home Office address or location in the policy, contract or certificate are hereby changed to reference Fort Wayne, Indiana as the location of the Home Office.

The Separate Account referenced in the policy, contract or certificate is hereby amended to read Lincoln Life Flexible Premium Variable Life Account JF-A.

All of the other terms and benefits of your policy, contract or certificate will remain unchanged.

The effective date of this endorsement is July 2, 2007.

Signed for The Lincoln National Life Insurance Company.

*Dennis R. Glass*
President

JFV END-5860

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE ALLEN CIRCUIT COURT |
| | ) SS: | CIVIL DIVISION |
| COUNTY OF ALLEN | ) | COURTHOUSE, ROOM 201 |

715 SOUTH CALHOUN STREET
FORT WAYNE, IN 46802
(260) 449-3491

Peter S. Bezich, individually and on behalf
of a class of others similarly situated

CASE NUMBER: 02C01-09*06*-PL-*73*

Plaintiff

VS

**SUMMONS**

THE LINCOLN NATIONAL LIFE INSURANCE COMPANY

Defendant

TO THE DEFENDANT:

**The Lincoln National Life Insurance Company**
c/o The Prentice-Hall Corp. System, Inc.
251 East Ohio Street, Suite 500
Indianapolis, IN 46204

You have been sued by the person(s) named above. The claim made against you is attached to this summons; please examine all pages carefully. The "X" marked below indicates the time limit you have to FILE YOUR ANSWER.

X ___ Certified Mail  You or your attorney must file a written answer to the claim WITHIN TWENTY-THREE (23) DAYS, commencing the day after you receive this summons, or judgment may be entered against you as claimed.

_____ Personal Service  You or your attorney must file a written answer to the claim WITHIN TWENTY (20) DAYS, commencing the day after you receive this summons, or judgment may be entered against you as claimed.

Your answer is considered filed the day it is received in the office of the Clerk of the Allen Circuit and Superior Courts, Room 201, Allen County Courthouse, Fort Wayne, Indiana 46802. The method you choose to deliver your answer to the Clerk's Office is up to you; however, you should be able to prove you filed the answer. If you wish to file a claim against another party associated with this case, you must state it in your written answer.

If you are required to appear, the date, time and location will be shown on an attached Notice of Hearing form. IF YOU FAIL TO APPEAR, A JUDGMENT MAY BE ENTERED AGAINST YOU.

Dated: _____ JUN 1 9 2009

_____
CLERK OF ALLEN CIRCUIT AND SUPERIOR COURTS

Matthew J. Connelly _____ (Plaintiff) ____
Attorney/Party Preparing Summons   Party Represented
1700 National City Center
110 West Berry Street
Street Address

(Seal)

Fort Wayne, IN 46802
City, State, Zip

(260) 423-3525 ____ #3332-02 ___
Telephone Number        Attorney Number

C.C.S.JC

**MANNER OF SERVICE**
(To be completed by Party Preparing Summons)

SHERIFF shall serve this Summons as follows:

_____ personal service
_____ leaving a copy at dwelling or place of employment

CLERK shall serve this Summons as follows:

_____ regular mail
  X     certified mail
_____ publication

OTHER manner of service:

_____ attorney to serve

_____ private process server, _____

_____ other (describe in particular and note Trial Rule

_____
08/2000  sum CLK 298.fb

CERTIFIED MAIL

I hereby certify, as indicated in the date issued field, that a copy of this document was sent to the named person at the address furnished, by registered/certified mail at Fort Wayne, Indiana, return receipt requested.

JUN 2 2 2009

Date Issued:_____

_____ .D.
Clerk of the Allen Circuit and Superior Courts

I hereby certify that service by registered/certified mail at Fort Wayne, Indiana, was attempted as required by law to the person and address stated on the return receipt attached; and that service was/was not made,
according to the information contained therein.

JUN 3 0 2009

Date Returned:_____

_____ T.B.
Clerk of the Allen Circuit and Superior Courts

ADMISSION OF SERVICE

I received a copy of this document on this date _____ and at this location:_____

_____          _____
                                            Signature of Party Relationship        (if not the within named person)

RETURN OF SERVICE BY SHERIFF OR OTHER OFFICER
Enter the alphabetical letter in the space provided to indicate the type of service.

I served a copy of this document as specified:  (_____)

    READING / delivering a copy (A) to the within named party;

    LEAVING A COPY for the within named party
        (B) with the spouse, named:      (F) with a secretary, named:
        (C) with a relative, named:       (G) with the attorney, named:
        (D) at the residence, located at:   (H) with this person (other - specify):
        (E) with the employer, named:

    Specify name of person, work supervisor, place of business, or location where copy was left.

and (if applicable) by sending a copy of this document by first-class mail to the last known address of the within named person as indicated:

Last known address of person named in the document (or Change of Address)

I did not serve a copy of this document because:          (_____)

(I)  the party was NOT FOUND / NO SUCH ADDRESS.     (R)  the party was on VACATION.
(J)  the document expired.     (S)  the party was NOT FOUND / VACANT.
(K)  the party AVOIDED service.     (T)  the party was NOT FOUND / MOVED.
(L)  the party REFUSED service.     (U)  the party was NOT FOUND IN THIS BAILIWICK.
(M)  the party was NO LONGER EMPLOYED at that address.  (V)  INSUFFICIENT ADDRESS / INFORMATION WAS GIVEN.
(N)  the document was RETURNED by the authority of the plaintiff.  (W)  they are NO LONGER IN BUSINESS.
(O)  the party is DECEASED.     (X)  several attempts were made / UNABLE TO SERVE.
(P)  the party was UNKNOWN AT THAT ADDRESS.    (Y)  of the following reason (OTHER - specify):
(Q)  the party was on SICK LEAVE / LAY OFF.

I AFFIRM, UNDER THE PENALTY OF PERJURY, THAT THE FOREGOING REPRESENTATIONS ARE TRUE.

_____          _____          _____
Date Served/Attempted              Time Served/Attempted       Signature of Sheriff of Allen County, Indiana (or other Officer)

_____                                      By: _____
(Printed Name of Process Server)                               (Signature of Process Server)

08/2000  sum CLK 298.fb

H:\Shelly\Shelly\Matt\A.Stueve.Siegel\Lincoln National Life\SUMMONS.wpd

 **UNITED STATES POSTAL SERVICE.**

Date: 06/27/2009

MAIL INC:

The following is in response to your 06/27/2009 request for delivery information on your Signature Confirmation(TM) item number 2180 5213 9071 6391 0246. The delivery record shows that this item was delivered on 06/26/2009 at 09:41 AM in INDIANAPOLIS, IN 46204 to C SEIGER. The scanned image of the recipient information is provided below.

Signature of Recipient:



Address of Recipient:



Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,

United States Postal Service

The customer reference info shown below is not validated or endorsed by the United States Postal Service.  It is solely for customer use.

cpl-09-73 sum 06/22 jc
THE LINCOLN NATIONAL LIFE INSURA
THE PRENTICE-HALL CORPORATION SY
SUITE 500
251 E OHIO ST
INDIANAPOLIS IN 46204

**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION**

|  |  |  |
|---|---|---|
| PETER S. BEZICH, individually and on behalf of a class of others similarly situated, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: _____ |
| | ) | |
| LINCOLN NATIONAL LIFE INSURANCE COMPANY, | ) ) | |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF JOSEPH PAUL MCKINNON, JR.**

Joseph Paul McKinnon, Jr. declares as follows:

1.      My name is Joseph Paul McKinnon, Jr.  This declaration is made in support of the Notice of Removal filed by The Lincoln National Life Insurance Company ("Lincoln National") and pursuant to 28 U.S.C. § 1746. I am of legal age and have personal knowledge of the matters set forth herein, or have familiarized myself with the following matters from the business records of Lincoln National, prepared and maintained in the normal course of business. I am competent to testify to the matters contained in this declaration, and they are true and correct.

2.      I have been employed by Lincoln National for approximately 7 years.  My title is Assistant Vice President, Life Inforce Product Management, a position I have held since joining Lincoln National in 2002. In this position, I am part of the Insurance Solutions organization within Lincoln National that designs and develops life insurance products.  In that capacity, I am responsible for actuarial support on technical issues in various areas related to product management,

1

**EXHIBIT**

2

product tax compliance, and customer service issues.

3.   I have reviewed the Complaint in this case, filed by Peter S. Bezich ("Plaintiff"). The allegations in the Complaint pertain to an Ensemble II Variable Universal Life Insurance policy, Policy Number 506017735, issued by Chubb Life Insurance Company of America ("Chubb"), on or about December 27, 1996, with an initial specified amount of $200,000 (the "Contract"). Each Chubb-issued Ensemble II Variable Universal Life Insurance policy was issued pursuant to one of four distinct policy codes; Plaintiff's Contract was issued pursuant to one of those, policy code V1002. I have also reviewed the copy of the Contract and correspondence related to the Contract attached by Plaintiff to the Complaint as Exhibit A.

4.   As a result of an acquisition, in 1997 Chubb Life Insurance Company of America was renamed Jefferson-Pilot Financial Insurance Company. Thereafter, effective July 2, 2007, Jefferson Pilot Financial Insurance Company merged into The Lincoln National Life Insurance Company.

5.   The Lincoln National Life Insurance Company, the sole defendant in this case, is a corporation organized and existing under the laws of the State of Indiana, with its principal place of business and corporate headquarters in the State of Indiana, and is a citizen of the State of Indiana. Lincoln National Life Insurance Company has never been a Connecticut corporation and has never had its principal place of business or headquarters in the State of Connecticut.

6.   Plaintiff claims that Lincoln National improperly deducted Cost of Insurance charges that exceed the amounts allegedly permitted by the terms of his life insurance policy. *See* Compl. ¶¶ 21-25. He purports to bring this action "on behalf of himself and as a representative of" a putative class comprised of:

> All persons who purchased a life insurance policy constituting a security from

2

Defendant or its predecessors in interest during the applicable statute of limitations that contains 1) a Cost of Insurance charge; 2) additional but separate policy charges or expenses; 3) any investment, interest-bearing, or savings component; and (4) a death benefit.

*Id.* ¶ 26 (emphasis added).

7. Lincoln National has conducted a good faith analysis of the life insurance policies that, based on Plaintiff's allegations, fit the definition of the class he seeks to represent, which potentially encompasses every variable universal life insurance policy issued by Lincoln National or a predecessor entity. *See* Compl. ¶ 26.

8. While Plaintiff's allegations regarding the types of policies included in the putative class are broad, Lincoln National first sought to conduct a conservative analysis, limited to policies of the specific type purchased by Plaintiff: Ensemble II Variable Universal Life Insurance policies issued by Chubb, pursuant to policy code number V1002. The Complaint does not seek to impose a precise time limitation on the class Plaintiff seeks to represent with respect to the date of issuance of the relevant policies, nor regarding the period during which the Cost of Insurance ("COI") charges were allegedly improperly deducted.  However, based on available electronic records, Lincoln National's good faith analysis reflects that simply during the period from January 1, 2003 to December 31, 2008, approximately $157 million in COI charges were deducted in connection with the estimated 26,000 Ensemble II Variable Universal Life Insurance policies issued pursuant to policy code number V1002 policies that were active as of March 31, 2003.

9. Lincoln National further conducted a separate but still conservative analysis, this time expanded to cover all variable universal life insurance policies issued and or administered by Jefferson Pilot Financial Insurance Company after its acquisition of Chubb but prior to its merger into Lincoln National ("Legacy Jefferson Pilot Variable Universal Life policies"); this expanded

block of policies would include, but not be limited to, the variable life insurance policy-type purchased by Plaintiff.  Based on available electronic records, Lincoln National's good faith analysis of this block of policies reflects that simply during the period from January 1, 2003 to December 31, 2008, approximately $580 million in COI charges were deducted in connection with the estimated 76,000 Legacy Jefferson Pilot Variable Universal Life policies that were active as of March 31, 2003.

10.     The COI charge deductions estimated and policy counts set forth in Paragraphs 8 and 9, above, do not include the approximately 59,000 policies issued by Lincoln National that were active as of December 31, 2008 and, based on Plaintiff's allegations, would also fit the definition of the class he seeks to represent.

I, Joseph Paul McKinnon, Jr., declare under penalty of perjury that the foregoing is true and correct.  Executed on this 23rd day of July, 2009.

_____
Joseph Paul McKinnon, Jr.